**The People of the State of Illinois, Plaintiff-Appellee, v. Floyd G. Ambrose, Defendant-Appellant.**

**Gen. No. 50,818.**

First District, Fourth Division.

May 26, 1967.

Leon Friedlander, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

CHARGE

Unlawful use of weapons.[1]

DEFENSE AT TRIAL

Evidence of guilt, admitted at trial over defense objection, was obtained by unconstitutional search and seizure incident to an illegal arrest.[2]

JUDGMENT

After a bench trial, the court found defendant guilty and imposed a one-year probation.

POINTS RAISED ON APPEAL

Same as at trial.

---

[1] Ill Rev Stats 1963, c 38, § 24–1. Unlawful Use of Weapons.
(a) A person commits the offense of unlawful use of weapons when he knowingly:

. . . . . .

(4) Carries concealed . . . on or about his person . . . any pistol, revolver, or other firearm;
[2] A. Amendment IV of the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures*, shall not be violated . . . . (Emphasis supplied.)
B. Identical provision is found in Art II, § 6 of the Illinois Constitution.

EVIDENCE

**Testimony of Witnesses for the State**

About noon on November 11, 1964, Mrs. Ann Lanovich of 9559 South Albany, Evergreen Park, Illinois, called the police and complained that a man, who turned out to be defendant, had been observed sleeping in a prairie ditch near some railroad tracks in back of a bank parking lot and visible from the Lanovich home. Children passed this place on their way to and from school. Defendant had been talking to some children, one of whom was Steve Lanovich, age 14, who testified that defendant had been mumbling incoherently during periods of consciousness. A lot of children gathered and watched defendant. He did not threaten any of the children.

Officer Nolan responded to a complaint that a man was stopping children and talking to them. When he arrived on the scene, defendant had gotten up and was walking through the bank parking lot. The officer stopped defendant and tried to question him, but defendant was incoherent, highly excited and acting oddly. During the conversation with the officer, defendant urinated in his pants. He was taken to the police station and told to empty his pockets prior to being put in the lockup. He only partially complied, and when police then searched him, they found a loaded Smith & Wesson revolver concealed in one of his pockets. Subsequent investigation revealed that defendant had an automobile which was being serviced that morning at a garage in the area and he had been told it would not be ready until noon of that day.

Defendant was charged with disorderly conduct and unlawful use of weapons. (He was found not guilty of the former offense.)

**Testimony of Defendant**

Defendant had taken his automobile to a service station in the village earlier that morning and was told it would not be ready until noon. As he was very tired, he lay

130

down to get some sleep. He neither threatened anyone, nor in any other manner conducted himself so as to justify his arrest. The reason he urinated in his pants during questioning by the officer was that he had been sleeping and the resultant physical need to relieve himself (of which we are asked to take judicial notice) plus his fear of the police officer caused him to lose control of his bodily functions.

OPINION

The ultimate question presented is whether, on the facts of this case, a loaded revolver, seized during the search at the jail prior to the confinement of defendant pending trial for disorderly conduct, was constitutionally admissible as evidence against him at a trial for unlawful use of weapons. We hold that it was, and defendant's motion to suppress (made prior to trial) was properly denied.

■ Our first concern is whether the arrest was valid. The fact that defendant was not convicted of disorderly conduct is not determinative of this question, since it is elementary that the quantum of proof necessary to establish reasonable cause for an arrest is much less than the proof beyond a reasonable doubt required to sustain a conviction for the same charge. Locke v. United States, 7 Cranch 339, 348, 3 L Ed 364; Brinegar v. United States, 338 US 160, 174–176; People v. Davis, 34 Ill2d 38, 40, 213 NE2d 531; People v. Garrett, 49 Ill App2d 296, 299, 200 NE2d 7.

■ The Village of Evergreen Park had an ordinance providing that the offense of disorderly conduct consists of creating "any improper . . . diversion, tending to a breach of the peace." (Section 21.20.) The village also had a vagrancy ordinance. (Section 21.22.) Under section 107–2(c) of the Criminal Code of Illinois: "A peace officer may arrest a person when . . . [h]e has reasonable grounds to believe that the person is com-

mitting or has committed an offense." (Ill Rev Stats 1963, c 38, § 107–2(c).) In our opinion, the officer had reasonable cause to arrest defendant under the circumstances of this case. Defendant's explanation of his reasons for urinating in his pants and evidence that he was merely awaiting completion of repairs on his automobile were not brought to the attention of the police until subsequent to the arrest. Even had these factors been known by Officer Nolan, however, we could not say that he had acted unreasonably in arresting a man who had been lying down sleeping in public, then mumbling incoherently, attracting a crowd, many of whom were young children, and who, when confronted by the officer in response to a complaint by one of the residents of the area, offered no explanation for his actions or his presence, acted in an odd and highly excited fashion, and urinated in his pants. We repeat that whether, on the basis of later-developed evidence, defendant should have been found guilty of the offense, or should have been discharged, as he was, has no bearing on whether the officer was legally authorized to arrest him and take him to the station for further investigation. While courts must remain mindful at all times of the rights of accused persons, we must also construe and apply section 107–2(c) so as to give effect to practical considerations; our decision should rest in each case upon the particular set of circumstances presented. (People v. Accardi, 58 Ill App 2d 364, 367–368, 208 NE2d 43, and cases cited therein.) In this case, we find that the arrest was based upon reasonable grounds and was therefore valid.

The next consideration is whether, at the trial on the weapons charge, the revolver was admissible as the product of a search incident to a valid arrest for a different offense. This general proposition has been well established in this state (People v. Jones, 16 Ill2d 569,

158 NE2d 773), but we have not been referred to any Illinois authority for the precise question presented here.[3]

The court in United States ex rel. Boucher v. Reincke, 341 F2d 977, 980 (2d Cir, 1965), holding first that the police were justified in arresting and searching defendant for complicity in stealing a briefcase, then considered the question of permissible use of a gun found in the briefcase as evidence against the defendant on the charge of carrying a dangerous weapon:

> A search of Boucher's person for evidence relating to the offense or discovery of possible means of resistance or escape was a proper incident to an arrest. Ker v. California, 374 US 23, 35, . . . (1963); Brinegar v. United States, 338 US 160, 175–178, . . . (1949). The search was not invalidated because it revealed an additional and different offense, i. e. the carrying of a dangerous weapon—an act proscribed by Connecticut law. Abel v. United States, 362 US 217, 238, . . . (1960); Harris v. United States, 331 US 145, 154, . . . (1947); (and other cases).

Additional support for the validity of the search in the instant case is found in the statutory duties imposed upon arresting authorities for the protection of themselves and other prisoners prior to confinement of accused persons pending trial. Ill Rev Stats 1963, c 75, §§ 18, 22. These duties cannot effectively be discharged without a search of the accused. As the court held in Charles v. United States, 278 F2d 386, 388 (9th Cir, 1960), cert den 364 US 831:

---

[3] Defendant has cited People v. Henneman, 373 Ill 603, 606, 27 NE2d 448; People v. McGurn, 341 Ill 632, 637, 638, 642, 173 NE 754, and People v. Roebuck, 25 Ill2d 108, 111, 183 NE2d 166, all of which are cases involving illegal arrest and therefore become distinguishable upon our finding of a valid arrest in the instant case.

. . . Power over the body of the accused is the essence of his arrest; the two cannot be separated. To say that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the custodial duties which devolve upon arresting authorities . . . .[4]

■■ In conclusion, we hold that the arrest of defendant without a warrant was lawful and that the search which uncovered a loaded revolver was likewise valid. The revolver was thus properly admitted in evidence against defendant on the concealed weapons charge.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.

---

[4] See also footnote 2, page 389; and an extensive discussion of this question in Taglavore v. United States, 291 F2d 262, 265 (9th Cir, 1961); also United States v. Caruso, 358 F2d 184, 185 (2d Cir, 1966) and United States v. Russian, 192 F Supp 183, 185–186 (Conn, 1961).