THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL COLEMAN, Defendant-Appellant.

Third District    No. 75-163

Opinion filed June 27, 1977.

Robert Agostinelli and Michael J. Pelletier, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Mark Schwartz, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, Paul Coleman, and co-defendants John Rafac and Patrick McClard, were found guilty of the offense of burglary after a

bench trial by the Circuit Court of Will County. All of the defendants were sentenced to a term of imprisonment of not less than one nor more than 10 years. This appeal is concerned solely with the defendant Paul Coleman. A separate appeal has been filed by the co-defendants.

The defendant Coleman and his co-defendants Rafac and McClard were on March 21, 1974, charged by an indictment with the offense of burglary. On April 5, 1974, at arraignment proceedings the defendant Coleman entered a plea of not guilty. On May 13, 1974, the defendant Coleman filed motions to suppress evidence illegally seized and to suppress a confession. The co-defendants filed like motions and in addition a motion for severance. It was stipulated by the attorneys for all defendants that there would be one hearing on all motions and that the testimony of the witnesses with respect to each motion would all be heard at this hearing.

The testimony adduced during the hearing on the motions disclosed that an Officer Behner of the Batavia Police Department on January 26, 1974, at approximately 5:55 a.m., while on a routine patrol observed a black Chevelle automobile parked on the north side of Phil's Standard Station lot located in Batavia. Although it was still dark three lights remained on at the gas station and Officer Behner was able to observe a number of individuals (later determined to be five) sitting low in the seats of the automobile. While approaching the vehicle Officer Behner radioed police headquarters, giving the parked vehicle's license number, location, and requested the assistance of a back up unit.

Officer Gatske of the Batavia Police Department testified that normally when police dispatch receives a call it punches the time such call is received on a color coded card. Card number 6583, which represented Officer Behner's call, was stamped 6:11 a.m., January 26, 1974. Testimony established that Behner initialled and changed the 6:11 a.m. stamped time to 5:55 a.m. with a penned-in notation. This was not a customary procedure.

The defendant and co-defendant Rafac testified that Officer Behner arrived at their parked vehicle at 6:10 a.m. Upon arrival Officer Behner inquired of the individuals in the parked Chevelle what the trouble was and was informed by co-defendant McClard that they had a flat tire.

Officer Behner exited from the squad car and noticed that the Chevelle had a city of Joliet sticker on it. He then requested that the driver of the vehicle, defendant Coleman, produce his driver's license. The defendant produced a license in the name of Harold D. Coleman (actually the license of his brother) which showed a birthdate of April 20, 1952. At this time Sergeant Fletcher of the Batavia Police Department arrived at the gas station and the defendant Coleman explained to him that he had a spare tire but no jack. Fletcher advised the defendant that if he would

get out his spare tire he would provide a jack. The defendant voluntarily opened the trunk of the Chevelle in the presence of the policemen and they immediately saw four mag tires. The mag tires were wider than the ones used on the Chevelle, were deflated and wedged tightly into the trunk. The defendant explained the mag tires' presence by saying that his brother had given them to him. Officer Behner returning to the driver's door of the Chevelle observed a green paper bag containing a large quantity of pennies lying on the floor of the car.

Officer Behner next requested that all occupants of the car produce some identification and when they did so it was determined that a passenger Talbot was a juvenile.

The juvenile Talbot was then arrested for curfew violation and the other four occupants, including the defendant Coleman, were advised that they were under arrest for contributing to the delinquency of a minor. Officer Behner, who radioed in the names and birthdates of the Chevelle's occupants including the name Harold Coleman, then received word from his dispatcher that there was an outstanding warrant on Harold Coleman.

Officer Fletcher advised the subjects collectively of their rights and the defendant Coleman, after being advised as to the outstanding warrant against him from Cook County for obstructing justice, was taken by Officer Behner to the Batavia police station. The remaining four subjects were taken to the station by Officer Fletcher.

In the squad room all five of the subjects, including defendant Coleman, were advised as to their constitutional rights and each individual verbally acknowledged that they understood their constitutional rights. All five individuals were then searched and defendant Coleman removed from his pocket a cylindrical vending machine key and a dullish green plate of metal with the name "Green and Lanier, Joliet" stamped on it.

At approximately 7:30 a.m. Officer Behner learned from Rafac that the defendant, who was posing as Harold Coleman, was in fact Paul Coleman, an escapee from St. Charles Training School, and that further there had been a burglary in Joliet during the preceding night.

Officer Behner next called the St. Charles Training School to inform the school as to the defendant Coleman's whereabouts. At approximately 10 a.m. two youth supervisors from St. Charles, namely Harry Ludwig and Paul Grimes, arrived at the Batavia Police Department. Supervisor Grimes talked to the defendant Coleman in the presence of Ludwig and the defendant told them that he, along with his accomplices, had broken into a gas station in Joliet, Will County, during the previous night where some tires, tools, oil and pennies had been taken and that they had later gone to Geneva where they took some mag wheels from a house. Prior to

the defendant's conversation with Grimes he was not again advised as to his constitutional rights.

At approximately noon on January 26, 1974, the Joliet Police Department contacted the Batavia Police Department and informed them that the Green and Lanier Texaco station in Joliet had been burglarized and they believed the defendant Coleman and his four companions to be the perpetrators of the crime. Later in the afternoon officers from the Joliet Police Department arrived in Batavia and took possession of the bag containing pennies, the vending machine key and the credit card plate from the Green and Lanier station. They also advised the defendant and his companions of their constitutional rights and then transported them to a police station in Joliet.

Upon their arrival in Will County the defendant Coleman and the suspects Rafac and McClard were again advised as to their constitutional rights and all three individuals signed forms certifying that the *Miranda* warnings had been given and that they fully understood their rights. Thereafter the defendant Coleman, Rafac and McClard each gave statements to the police which set forth in detail their involvement in the burglary of the Green and Lanier service station and the theft of the four mag wheels and tires near Geneva. McClard executed a consent to search his apartment and such search yielded further items which had been taken in the burglary of the gas station.

After extensive hearings (during which the above facts were adduced) on the defendant Coleman's and the co-defendants Rafac and McClard's combined motions for severance and suppression of evidence and confession, the trial court denied the defendant's motions.

The defendant Coleman in this appeal assigns as reversible error the court's refusal to suppress the physical evidence and his confession because the police lacked probable cause to arrest him for contributing to the delinquency of a minor and for the further reason the arrest for "contributing" was a mere pretext for a legally improper investigation resulting from the suspicious presence of the four tires in the trunk of the defendant's automobile.

■■ The defendant concedes that a peace officer may arrest a person when he has reasonable grounds to believe that a person is committing or has committed an offense. (See Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c), and *People v. Wright* (1969), 42 Ill. 2d 457, 248 N.E.2d 78.) It is a further accepted rule of law that the reasonableness of the arrest must be determined by the knowledge and information possessed by the police officer at the time the arrest is made. *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.

■■ The defendant apparently quarrels not with these well established principles of law but does argue that Officer Behner did not possess the

requisite knowledge and information to sustain an arrest for contributing to the delinquency of a minor. We do not so interpret the evidence. The officer was aware of the fact that five young men were in a parked automobile with a flat tire at either a few minutes before or a few minutes after 6 a.m. The officer could and did reasonably assume that the automobile and its accupants had been on the highway or the service station lot prior to 6 a.m. The defendant, not Officer Behner, established himself as being over 21 years of age when he produced his brother Harold's drivers license which indicated that the license was that of an adult. Shortly thereafter Officer Behner discovered that one of the occupants was a minor and hence was justified in assuming that there was a violation of the curfew act (Ill. Rev. Stat. 1973, ch. 23, par. 2371 *et seq.*) and that the defendant was a contributing factor to such violation in that he knowingly caused, aided and encouraged the minor to violate the act. See Ill. Rev. Stat. 1973, ch. 23, par. 2361a.

Section 1 of the curfew act (Ill. Rev. Stat. 1973, ch. 23, par. 2371(a)) provides in part that:

> "It is unlawful for a person less than 18 years of age to be present at or upon any public assembly, building, place, street or highway at the following times unless accompanied and supervised by a parent, legal guardian or other responsible companion at least 21 years of age approved by a parent or legal guardian * * *."

■■ The defendant asserts that his arrest for contributing to the delinquency of a minor was invalid in that Officer Behner did not attempt to ascertain whether or not the minor was in the presence of a 21-year-old individual with the consent of the minor's parents or legal guardian. It is true that Officer Behner did not question the defendant as to his age but accepted the information on the drivers license which indicated that the defendant was over the age of 21. Was the officer then under a duty to seek information concerning consent or lack of consent as required by the curfew statute. Under the facts of this case, we believe not. Four mag tires unsuitable for the car which the defendant was operating had already been discovered wedged in the vehicle's trunk. The green paper bag containing pennies had already been observed on the floor of the Chevelle. The defendant had already lied to the officer when he stated that he had a spare tire but no jack, since the mag tires were not suitable for use on the Chevelle. The officer had every reason to suspect that the defendant was not a responsible adult and that he would not receive reliable or truthful information from him. It can reasonably be concluded that little would have been accomplished by asking the minor Talbot if he was with the defendant with his parents consent. Such a question should be directed to the parents of the minor who were not present at the time of the arrest.

■■ The defendant further claims that the defendant's arrest was not valid since the minor Talbot was on property where the curfew statute is not enforceable in that the minor was on private property. The intent and purport of our State curfew law can not be circumvented by an interpretation that would permit a minor to do as he pleases, and when he pleases as long as the minor's activities were on private property. Our supreme court recently held the curfew statute to be constitutional in *People v. Chambers* (1976), 66 Ill. 2d 36, 360 N.E.2d 55. In *Chambers* our supreme court stated:

> "The primary interest advanced by the State to justify the restrictions of the statute as to time, place and circumstance is the traditional right of the State to protect its children. The statute proceeds upon the basic assumption that when a child is at home during the late night and early morning hours, it is protected from physical as well as moral dangers." 66 Ill. 2d 36, 42.

It would be a gross distortion of the intent of the curfew statute to hold that it permitted the protection of the children of this State only if they were on public property such as a highway, but that such protection would not be afforded to them if they were on privately owned property.

■■ The standard against which Officer Behner's conduct must be judged is a standard of probable cause, not proof of criminal activity beyond a reasonable doubt. (See *People v. Mills* (1968), 98 Ill. App. 2d 248, 240 N.E.2d 302.) For the reasons we have set forth we are of the opinion that there was probable cause for the arrest of the defendant on the charge of contributing to the delinquency of a minor.

We further reject the defendant's contention that his arrest for contributing to the delinquency of a minor was a pretext to justify a further investigation of other crimes which resulted in an inventory search and the disclosure of incriminating statements. The defendant argues that the search of his person after his arrest for contributing to the delinquency of a minor violated his constitutional rights in that he was not given an opportunity to or even advised of his right to post bail. In support of this contention the defendant relies upon the case of *United States v. Mills* (D.C. Cir. 1972), 472 F.2d 1231. While the rationale in *Mills* supports the defendant's contention we are of the opinion that such rationale was rejected by the United States Supreme Court in the case of *United States v. Robinson* (1973), 414 U.S. 218, 235-36, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477. In *Robinson* the court stated;

> "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the

authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment."

■ We have previously determined that the defendant was lawfully arrested and the fact that he was not subsequently prosecuted for the charge of contributing to the delinquency of a minor does not serve to convert the initial lawful arrest into an unlawful arrest. (See *People v. Ambrose* (1967), 84 Ill. App. 2d 128, 228 N.E.2d 517.) The arrest of the defendant being lawful a full search of his person was permissible. The physical evidence resulting from such search and the confession of the defendant to having committed the offense of burglary were the legal fruits of such search. We deem the activities of Officer Behner to have been in good faith while engaged in good police work and therefore the defendant's motion to suppress physical evidence and his confession was properly denied by the trial court. See *People v. Brown* (1967), 38 Ill. 2d 353, 231 N.E.2d 577.

■■ While the defendant Coleman did not in his brief filed with this court raise as an issue that the trial court abused its discretion by denying him probation. This issue was raised in the briefs of the co-defendants McClard and Rafac. The appeals of three defendants were consolidated for purposes of oral argument and at that time the defendant Coleman raised the denial of probation issue. In denying probation to all the defendants the trial court made the following observation:

"It is the judgment of this court that all three of the defendants have taken the trial of this cause more of a joke than as a reality. That is based upon my own personal observations of all three of them."

This statement dehors the record for there is nothing in the transcript of the defendant's trial which provides a foundation or basis for such a statement. During the 13 days that the defendant was in court not once was he admonished as to his conduct. The statement of the court being unsupported by any evidence must be classified as a personal opinion which is incapable of being reviewed by this court. We consequently conclude that while the conviction of the defendant for the offense of burglary should be affirmed this case should be remanded to the Circuit Court of Will County for a new sentencing hearing.

Affirmed, but remanded with directions.

ALLOY, P. J., and STOUDER, J., concur.