ERIC ROTHNER *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 77-971

Opinion filed October 31, 1978.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellants.

Irwin G. Jann and Jerome N. Zurla, both of Chicago (L. David Rish, of counsel), for appellees.

Mr. JUSTICE BROWN delivered the opinion of the court:

Plaintiffs, officers and directors of 10 nursing homes located in the City of Chicago, filed a complaint on February 28, 1977, for declaratory and injunctive relief against the City of Chicago, the Commissioner of the City's Department of Buildings, and the City's Corporation Counsel.

They sought a declaration that an April 7, 1976, amendment to the Municipal Code, which amendment required all nursing homes in the city to provide automatic sprinkler systems, was unconstitutional; and temporary and permanent injunctions enjoining defendants from enforcing the ordinance as amended.

On April 27, 1977, the trial court, having heard argument, entered an order which granted plaintiffs' motion for judgment on the pleadings and a permanent injunction against enforcement of the amended ordinance, and which denied defendants' motion for summary judgment. The trial court found that the amended ordinance arbitrarily discriminated against a single type of Class B Institutional Units, nursing homes, by omitting from coverage all other types of Class B Institutional Units, and declared the amendment unconstitutional as violative of the equal protection clauses of the Federal (U.S. Const., amend. XIV) and State (Ill. Const. 1970, art. I, §2) constitutions. The trial court did not reach other constitutional challenges presented by plaintiffs.

Defendants appeal from the entry of the April 27, 1977, order, pursuant to the trial court's finding therein that there was no just reason for delaying enforcement or appeal. Ill. Rev. Stat. 1975, ch. 110A, par. 304(a).

The parties raise the following issues for our review: (1) whether plaintiffs have standing to sue; (2) whether there was an issue of fact to be tried; (3) whether the amendment may be made applicable to buildings in existence prior to its enactment; (4) whether the amended ordinance effects a taking of property without due process and just compensation; (5) whether the amended ordinance is pre-empted by Federal and State health care policies; (6) whether the amended ordinance violates the equal protection clauses of the Federal and State constitutions; and (7) whether the amended ordinance constitutes special legislation in violation of the State Constitution.

On April 7, 1976, the City Council of the City of Chicago amended chapter 64 of the Municipal Code, entitled "Fire Protection," as follows:

"SECTION 1. Chapter 64 of the Municipal Code of Chicago is hereby amended by deleting the bracketed portion of Section 64—3(h) below and adding a new Section 64—3(l) in Italics below:

64—3. Automatic sprinkler systems shall be provided in the following buildings and areas:

* * *

(h) On or before December 31, 1963, in every existing, pre-ordinance building and buildings hereafter erected, two stories or more in height, used in whole or in part as Type I school, or used in whole as Type II school, and hospitals, infirmaries, [nursing homes,] nurseries, orphanages, sheltered-care homes, sanitoria and homes for the aged, as defined in Section 48—3 of the Code as

Class B Institutional Units, and each of construction Type III-A, III-B, III-C, IV-A, IV-B. Such installation shall include basement areas.

\* \* \*

(1) *On or before February 1, 1977, in every existing or pre-ordinance building and building hereafter erected, used in whole or in part as a nursing home, as defined in Chapter 136 of this code. Such automatic sprinkler system shall be supervised.*
SECTION 2. This ordinance shall be in full force and effect from and after its due passage."

Chapter 48 of the Municipal Code is entitled "Classification of Buildings by Occupancy." Section 48—3 provides that Class B Institutional Units "shall include, among others," the following: asylums; day-care centers (Class II); homes for aged; hospitals; infirmaries; jails; nurseries; nursing homes; orphanages; sanatoria; and sheltered care homes.

Chapter 49 of the Municipal Code is entitled "Classification of Buildings by Construction Type." Section 49—1 provides that all buildings shall be classified under four general types. Type I is "Fire Resistive Construction." Type II is "Non-Combustible Construction." Type III is "Exterior Protected Construction," Type III-A being "heavy timber" construction and Types III-B and III-C being "ordinary" construction other than heavy timber in which the structural elements of the interior framing are entirely or in part of wood or other materials not more combustible than wood. Type IV is "Combustible Frame Construction," Types IV-A and IV-B being construction in which the structural elements, including enclosing walls, are entirely or in part of wood or other materials not more combustible than wood.

An examination of the ordinance reveals that the effect of the April 7, 1976, amendment is to require nursing homes of fire-resistive or noncombustible construction to provide automatic sprinkler systems, while it does not require those systems in the other Class B Institutional Units specifically enumerated in the ordinance which are of fire-resistive or noncombustible construction. Furthermore, it continued the minimum height requirement for those other Class B Institutional Units while it abolished that requirement for nursing homes. We note that both prior to and after April 7, 1976, asylums, day care centers (Class II), and jails, designated as Class B Institutional Units in section 48—3 of the Municipal Code, were not required to provide automatic sprinkler systems under the ordinance. Additionally, both prior to and after April 7, 1976, the ordinance required certain Type I and Type II schools, which are not classified as Class B Institutional Units, to provide automatic sprinkler systems.

Plaintiffs alleged in their complaint that as a result of the passage of the ordinance on April 7, 1976, they have not obtained their city licenses, and therefore will not be entitled to Federal and State funds for patient care; that without those funds, they will suffer irreparable harm and damage and that they will not be able to carry on as nursing homes; that they will suffer irreparable harm and damages in that the cost of installing automatic sprinkler systems in a fire resistant building would be prohibitive and that inability to obtain financing would force many nursing homes to close; that installations in the 62 homes requiring sprinkler systems under the ordinance could not be completed within the time allotted; that since no monies are provided by any agency, the money for the installation would come from money that would be put to patient care; that the city should have provided financing; that the National Life Safety Code does not require sprinkler systems in fire resistant nursing homes; that the city council is usurping the powers of Federal and State governments in this area since all standards are adequately set forth by (a) Department of Public Health, (b) State Fire Marshall, and (c) Department of Public Aid; that the ordinance is unconstitutional since the city is confiscating the property of plaintiffs in requiring the installation of a system that would lower the quality of patient care without compensating the nursing homes in any way; that the city is arbitrarily discriminating against nursing homes as a member of Class B Units since it did not apply the ordinance against the other members of that class; and that the amendment to chapter 64 is unconstitutional since it discriminates against a member of a particular class.

Defendants' answer stated that plaintiffs do not have their licenses because they are not in conformity with the ordinance; that it is immaterial to the validity of the amended ordinance whether or not any agency is required to provide financing; that it is immaterial what the National Life Safety Code requires; and denied the balance of plaintiffs' allegations. Plaintiffs filed a motion for judgment on the pleadings and therein alleged that no material fact issue remained to be tried. Plaintiffs filed a brief in support of their motion. Defendants filed a motion for summary judgment and a brief in support thereof. Defendants attached the following as exhibits to their brief: (1) the "Report of the Investigation of the Wincrest Nursing Home Fire on January 30, 1976," prepared by a special panel appointed by the City's mayor; and (2) the transcript of proceedings of the February 26, 1976, meeting of the City Council's Committee on Buildings and Zoning.

One recommendation in the report of the special panel was that sprinkler systems be installed in all new and existing nursing homes and be electrically interconnected with the fire alarm system for water flow.

After hearing testimony regarding the recommendations contained in the report, the committee voted on February 26, 1976, to recommend to the City Council passage of the challenged amendment.

We turn now to a consideration of the issues presented in this appeal.

■■ Plaintiffs contend that defendants are precluded from raising the first issue, whether plaintiffs have standing to sue, since they failed to raise the issue in the trial court. The record indicates that this matter was not presented to the trial court. "The rule is well established that matters not raised or presented in the trial court cannot be urged for the first time in a reviewing court. [Citations.]" (*Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 602, 169 N.E.2d 73.) We find that defendants cannot now propound that plaintiffs did not have standing to sue. *Ray,* 19 Ill. 2d 593, 601-02.

Plaintiffs further contend that defendants have waived the second issue, whether there was an issue of fact to be tried. Defendants set forth in the "Issues Presented for Review" portion of their brief the question of whether there was a contested issue of material fact remaining unresolved—whether the plaintiffs were damaged. There is no supporting argument in defendants' brief. "Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7).) We find that defendants have waived the issue of whether there was an issue of fact to be tried.

The third issue, raised by defendants, is whether the amendment may be made applicable to buildings in existence prior to its enactment. ■■ ■ In *City of Chicago v. Miller* (1963), 27 Ill. 2d 211, 219, 188 N.E.2d 694, our supreme court stated, in reviewing its prior holding in *Abbate Bros. v. City of Chicago* (1957), 11 Ill. 2d 337, 343, 142 N.E.2d 691, *appeal dismissed* (1957), 355 U.S. 65, 2 L. Ed. 2d 106, 78 S. Ct. 140:

> "After reviewing the previous decisions of this court and the decisions of other jurisdictions, we held that municipal corporations in the exercise of their police power may constitutionally require changes in existing structures for the protection of health and safety, provided that it appears that the public welfare demands such application and that the property owners do not suffer unreasonable exactions as contrasted with the resulting public benefits." (27 Ill. 2d 211, 219.)

(*See Kaukas v. City of Chicago* (1963), 27 Ill. 2d 197, 201, 188 N.E.2d 700, *appeal dismissed* (1963), 375 U.S. 8, 11 L. Ed. 2d 40, 84 S. Ct. 67; *City of Chicago v. Kutil* (1st Dist. 1976), 43 Ill. App. 3d 826, 828-30, 357 N.E.2d 200; *City of Chicago v. Sheridan* (1st Dist. 1976), 40 Ill. App. 3d 886, 888-89, 353 N.E.2d 270; wherein the *Abbate* balancing test has been applied by our courts in determining retroactive application of protective ordinances.) In the instant case, the record indicates that the amendment

tends to promote the health and safety of nursing home residents. The record is devoid of evidence which would tend to prove that plaintiffs' cost of compliance would be unreasonable compared to the benefits accruing to the public. We hold that the city, in the exercise of its police powers (Ill. Const. 1970, art. VII, §6(a); Ill. Rev. Stat. 1975, ch. 24, pars. 11—8—2 and 11—20—5), had the authority to enact the amendment and also had the authority to make the amendment applicable to existing buildings. See *Miller*, 27 Ill. 2d 197, 219.

The fourth issue, raised by plaintiffs, is whether the amended ordinance effects a taking of property without due process and just compensation. U.S. Const., amends. V and XIV; Ill. Const. 1970, art. I, §2 and §15.

Plaintiffs argue that nursing homes that cannot afford to install automatic sprinkler systems will not receive city licenses, and thus Federal and State payments will be taken away from these homes and they will be forced to close. They further argue that Federal and State public aid payments would have to be reallocated from patients' benefits to pay for the cost of installation, and that their relationship with the Federal and State authorities as regards public aid payments can be viewed as contractual in nature. Plaintiffs contend that the amended ordinance thus effects a taking of private property without due process and just compensation.

In *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 328, 265 N.E.2d 640, our supreme court stated:

> "Regulations imposed by a State in the exercise of its police power, when reasonable and adapted to the scope and objects sought to be accomplished, are not rendered unconstitutional even though private property may be injured, interfered with, or damaged without the payment of compensation. The constitutional rights obtaining to private property are subordinate to the police power, [citations] and if legislation is within the police power, then the rights of the individual which may be affected thereby must give way to the superior rights of the public, and he cannot complain that his property is taken without due process of law or without compensation first paid to him. [Citations.]"

We find that the amended ordinance is reasonably related to and tends to accomplish its purpose, which is to prevent deaths from fire in nursing homes. "The wisdom, necessity and expediency of police regulations are no concern of the courts, but are matters primarily for the legislative body of the municipality. [Citation.]" (*Greyhound Lines, Inc. v. City of Chicago* (1st Dist. 1974), 24 Ill. App. 3d 718, 729, 321 N.E.2d 293; see *Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 257, 65 N.E.2d 805, and *Union Oil Co. v. Pollution Control Board* (3d Dist. 1976),

43 Ill. App. 3d 927, 931, 357 N.E.2d 715.) We hold that the amended ordinance does not effect a taking of private property without due process or just compensation.

■ The fifth issue, raised by plaintiffs, is whether the amended ordinance is pre-empted by Federal and State health care policies. Plaintiffs contend that public health care policies are thwarted because the amended ordinance would require a reallocation of public aid payments to pay for the cost of installation of automatic sprinkler systems. We find this contention to be without merit. The record does not contain evidence as to whether or not public aid payments can be applied for capital improvements. Plaintiffs also fail to cite, and our research has not disclosed, any authority which rests the regulation of nursing homes exclusively in the Federal or State governments, or any provision which would indicate an intent to pre-empt this area.

The sixth issue, raised by defendant, is whether the amended ordinance violates the equal protection clauses of the Federal (U.S. Const., amend. XIV) and State (Ill. Const. 1970, art. I, §2) constitutions. Plaintiffs contend that the amended ordinance arbitrarily discriminates against nursing homes in that it fails to require other Class B Institutional Units that are of fire-resistive construction, specifically homes for aged, hospitals, infirmaries, nurseries, orphanages, sanatoria, and sheltered care homes, to provide automatic sprinkler systems. Defendants contend that the amendment is a reasonable exercise of the legislative discretion to classify evils in the same genus and to legislate only as to the species which is more urgent.

■ Our supreme court has enunciated the principles which guide us in our determination of the equal protection issue:

> " '* * * we start with the general consideration that a state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. * * * The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. *It is not enough to invalidate the law that others may do the same thing and go unpunished if, as a matter of fact, it is found that the danger is characteristic of the class named.* [Citation.] The state "may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuse." ' (Emphasis supplied.)"

*Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 543-44, 224 N.E.2d 793, citing *Patsone v. Pennsylvania* (1914), 232 U.S. 138, 58 L. Ed. 539, 34 S. Ct. 281.

"A city, under its police power to provide for the protection of the

health, lives and safety of its inhabitants, may enact legislation affecting only one particular class of inhabitants, and such classification is not discriminatory if there is some fair reason for the application of the law to the class affected which does not also require with equal force its application to others whom it leaves untouched." *Father Basil's Lodge v. City of Chicago* (1946), 393 Ill. 246, 259, 65 N.E.2d 805.

"The *sine qua non*, however, is that under the steps taken, the differences between those included and those excluded from the law are reasonably related to its purpose. [Citations.]" *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 549.

Applying the foregoing principles to the instant case, we find that the classification is reasonably and fairly related to the purpose of the amended ordinance. Nursing homes, while similar to homes for aged and sheltered care homes, are distinct and different from the latter two institutions, as the three are defined in Section 136—1 of the Municipal Code of Chicago. And the difference between nursing homes and hospitals, infirmaries, nurseries, orphanages and sanatoria is easily perceived. Each of the aforementioned institutions has characteristics and qualities which are unique to it, as compared with each other institution. While a fire in any of these institutions might cause the loss of many lives, the potential for disaster from fire seemed greatest in nursing homes to the City Council of the City of Chicago, in view of the tragedy which occurred in the Wincrest Nursing Home on January 30, 1976. The testimony given before the City Council's Committee on Buildings and Zoning indicates that such tragedies are characteristic of nursing homes, and can be prevented or minimized by the installation of automatic sprinkler systems.

■■ We are unable to say that the classification invidiously or arbitrarily discriminates against nursing homes. We therefore hold that the trial court erred in finding that the amended ordinance violates the equal protection clauses of the Federal (U.S. Const., amend. XIV) and State (Ill. Const. 1970, art. I, §2) constitutions.

The final issue, raised by plaintiffs, is whether the amended ordinance constitutes special legislation in violation of the State Constitution. (Ill. Const. 1970, art. 4, §13.) Plaintiffs contend that the amended ordinance confers a special status on all Class B Institutional Units, other than nursing homes, without any reasonable or rational basis. We disagree. "A statute classifying persons or objects is not unconstitutional because it affects one class and not another, provided that it affects all members of the same class alike and provided that the classification is not arbitrary, but based upon some substantial difference in circumstances properly related to the classification. [Citations.]" *(Kobylanski v. Chicago Board of*

*Education* (1976), 63 Ill. 2d 165, 175, 347 N.E.2d 705; see *McRoberts v. Adams* (1975), 60 Ill. 2d 458, 462-63, 328 N.E.2d 321; *Glass v. Ingalls Memorial Hospital* (1st Dist. 1975), 32 Ill. App. 3d 237, 239-40, 336 N.E.2d 495.) Since all nursing homes are similarly treated under the amended ordinance, and since we have found that the classification is not arbitrary, there is no violation of the constitutional prohibition against special legislation. Ill. Const. 1970, art. 4, §13.

For all of the aforementioned reasons, we conclude that the amended ordinance does not run afoul of any constitutional provision cited herein. Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

DOWNING and PERLIN, JJ., concur.