LAS FUENTES, INC., et al., Plaintiffs-Appellees, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (1st Division)   No. 1—90—2110

Opinion filed February 11, 1991.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Ruth M. Moscovitch, and Thomas Dombai, Assistant Corporation Counsel, of counsel), for appellant.

Siegel, Moses & Schoenstadt, Jenner & Block, and Greenburg & Hermann, all of Chicago (Morton Siegel, James L. Webster, Michael A. Moses, Richard G. Schoenstadt, John B. Simon, Joel T. Pelz, and Barry H. Greenburg, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Las Fuentes, Inc., and seven other plaintiffs challenged amendments to the City of Chicago's (the City's) liquor license ordinance requiring a special license to operate beer gardens, which were previously operated under an establishment's general liquor license. The trial court entered a preliminary injunction against enforcement of the so-called "beer garden" ordinance. The City appeals. For the reasons below, we vacate the injunction and remand.

In the summer, many Chicago liquor establishments move their business outdoors to beer gardens, which allow patrons to enjoy the warm weather. But along with the ambience comes problems for the beer gardens' neighbors: noise, late hours, unruly patrons. The problems were addressed by the City, however, through amendments to chapter 147 of the Chicago Municipal Code, which regulates the sale of liquor in the City. The amendments were adopted in November 1989 and took effect in the next licensing period, which began May 1, 1990. As amended, chapter 147 requires an establishment to obtain an additional license to operate a beer garden, which was previously operated under an establishment's general liquor license.

Chapter 147 defines a "beer garden" as "the privately owned outdoor location adjacent to a premises licensed for consumption on the

premises—incidental activity or as a tavern or club, where alcoholic liquor may be sold and consumed subject to the provisions governing beer garden licenses." (Chicago Municipal Code §147—1 (1989).) Under chapter 147, an applicant for a beer garden license must serve written notice on all legal voters residing within 250 feet of the premises and furnish the department of revenue with the names and addresses of all persons notified. The applicant must also place a notice in the newspaper and on the premises, and notify the alderman of the affected ward. Once application is complete, there is a 21-day waiting period, in which the premises are inspected by the police, fire, and health departments.

After the 21-day waiting period, the application materials, along with any written objections submitted by neighbors, are reviewed by the local liquor control commissioner, who determines, in his discretion, whether to grant or deny the license according to the standards provided in chapter 147:

"The Local Liquor Control Commissioner may deny an application for a city liquor dealer's license if the issuance of such license would tend to create a law enforcement problem, result in or add to an undue concentration of licenses, or have a deleterious impact on the health, safety or welfare of the community in which the licensed premises is located." (Chicago Municipal Code, §147—4(h) (1989).)

The amendments to chapter 147 were made effective May 1, 1990, the beginning of the new licensing period.

After the amendments to chapter 147 were enacted, the City made three attempts to notify potential beer garden licensees. On February 1, 1990, the department of revenue notified all current liquor license holders of the amendments to chapter 147, enclosing "Supplemental Form A," seeking information as to which licenses the licensee would seek for the new license period beginning May 1, 1990. A second notice and form A were sent March 5, 1990, to all current licensees, and a third notice was sent on March 19, 1990, to all licensees that had not returned a form A.

On June 7, 1990, eight establishments that had operated beer gardens under the old licensing system filed suit against the City challenging the constitutional validity of the so-called "beer garden" ordinance. Of the eight plaintiffs, three obtained beer garden licenses by June 12, 1990, three were denied licenses on other grounds, and two had not applied for licenses as of July 10, 1990.

The trial court issued a temporary restraining order enjoining enforcement of the ordinance and subsequently heard a motion for pre-

liminary injunction. The trial court found that the new licensing procedure was arduous, constituted a partial revocation of the old license without proper due process safeguards, and allowed subjective evaluations for licensing without standards. The trial court further found that the ordinance violated equal protection by treating beer gardens differently from sidewalk cafes. The trial court entered the preliminary injunction on July 17, 1990, and denied the City's motion for a stay of the order. The City appeals.

■ The preliminary injunction barring enforcement of the beer garden ordinance was entered in error, as Las Fuentes cannot succeed on the merits of its claim. Although the merits of Las Fuentes' claim are not directly before this court on appeal, we may review the claims as a threshold matter, because the reasonable likelihood of success on the merits of the claim is a condition necessary to support a preliminary injunction. (See *Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793, 483 N.E.2d 999.) Here, Las Fuentes claimed that the beer garden ordinance failed to satisfy due process, violated equal protection, and was impermissibly vague. Those claims cannot withstand even superficial analysis, however, and accordingly, Las Fuentes failed to show a reasonable likelihood of success on the merits.

Las Fuentes first argues that because a beer garden license could be denied simply on the basis of application materials and inspections, without a hearing before denial, the beer garden ordinance violated due process. But Las Fuentes' argument relies on the trial court's erroneous finding that, because the old licensing scheme allowed operation of beer gardens under a general liquor license, the new licensing scheme requiring an additional license constituted a partial revocation of the general license.

■ Where legislation implicates a protectable right or interest in property, the affected party is entitled to reasonable notice and a meaningful opportunity to be heard. Here, the parties devote substantial ink to whether a liquor license constitutes property, but that issue is irrelevant. Although a liquor license is not property (Ill. Rev. Stat. 1987, ch. 43, par. 119), revocation of such a license must satisfy due process. There is no vested interest, however, in the *renewal* of a liquor license, thus nonrenewal of a license, or the denial of a new license, is not subject to due process. See *Black Knight Restaurant, Inc. v. City of Oak Forest* (1987), 159 Ill. App. 3d 1016, 513 N.E.2d 109; *Two Kats, Inc. v. Village of Chicago Ridge* (1986), 147 Ill. App. 3d 440, 497 N.E.2d 1314; *City of Wyoming v. Illinois Liquor Control Comm'n* (1977), 48 Ill. App. 3d 404, 362 N.E.2d 1080.

■ Here, the new licensing scheme did not contemplate the revocation of a valid liquor license, to be replaced by a new license and an additional beer garden license. Rather, the ordinance became effective on the date the new licensing period began, and compliance with the new licensing scheme was required when applying to renew licenses; Las Fuentes' general license expired before the beer garden ordinance became effective. Thus, Las Fuentes was applying, under a new licensing scheme, for a renewal of its general liquor license, and for a new beer garden license, and neither application was subject to due process.

■ Las Fuentes next argues that because sidewalk cafes may continue to serve liquor outdoors under their general liquor license, the beer garden ordinance violates equal protection. But legislation does not violate equal protection merely by prescribing different treatment for different classes of individuals. Where legislation conceivably serves as a rational means to further a legislative purpose, it is valid. Legislation will be subject to further scrutiny only where it creates a suspect classification or affects a fundamental right or interest. Here, Las Fuentes can show neither a suspect class nor the implication of a fundamental right.

Las Fuentes and the other plaintiffs are beer gardens, commercial enterprises statutorily defined as establishments generating more than 50% of their gross revenues through the sale of liquor, outdoors on private land. No fundamental right or interest exists in the totally economic and commercial activity defining the classification. Further, the classification, which affects neither race, gender, nor religious, ethnic or national origin, cannot be called suspect. Accordingly, the beer garden ordinance should be upheld as long as it conceivably serves the legislative purpose.

■ The City sought to alleviate problems associated with people consuming liquor outdoors in the summer, created an ordinance defining establishments especially prone to those problems, and allowed their operation only after a determination that the problems would not be exacerbated. Clearly, the beer garden ordinance serves as a rational means to the legislative end. Las Fuentes attacks the rationality of the ordinance by pointing to the small differences between beer gardens and sidewalk cafes, but where the legislation affects no suspect class, the basis for the classification is irrelevant. The beer garden ordinance satisfies equal protection.

■ Finally, this court need not, and indeed should not, consider Las Fuentes' vagueness argument. Las Fuentes contends that the beer garden ordinance, as enacted, creates an arduous application

process, vague standards for granting beer garden licenses, and makes licensing susceptible to arbitrary decisions by the local liquor control commissioner. But, the beer garden ordinance meets the minimum rationality test; thus, the possibility that it might have been more artfully drafted, or might place beer gardens at a competitive disadvantage to sidewalk cafes, is not fatal to its constitutional validity. Further, the wording or mechanism of the ordinance is not an appropriate inquiry for the courts, because such scrutiny reaches the substance of the ordinance, a concern addressed more appropriately through the political process than the judicial process.

■ We hold that the trial court erred in entering the preliminary injunction because Las Fuentes' substantive challenges to the beer garden ordinance were groundless. Las Fuentes may have raised valid objections to the drafting of the ordinance, but those objections are more appropriately addressed through the political process, and we note that Las Fuentes made no allegation that the ordinance was not properly enacted or Las Fuentes and the other plaintiffs were excluded from participation in the political process that created the ordinance. Accordingly, we vacate the preliminary injunction and remand.

Vacated and remanded.

CAMPBELL and BUCKLEY, JJ., concur.