ROBERT LAPPIN *et al.*, Plaintiffs-Appellants, v. DENNIS COSTELLO *et al.*, Defendants-Appellees.

Fourth District    No. 4—92—0009

Opinion filed August 6, 1992.

1034

Charles L. McNeil, of McNeil & McNeil, of Mason City, for appellants.

Richard R. Harden, of Thomas, Mamer & Haughey, of Champaign, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

In this appeal, plaintiffs Robert Lappin and AAA Promotions, Inc., seek review of the orders of the circuit court of Champaign County dismissing counts II and V of the second-amended complaint against defendants City of Champaign (City) and Frederick Stavins, as city attorney of the City, and further granting summary judgment as to defendants Dennis Costello and the City on the remaining counts. Costello was a charging police officer at the time of the incident which is the subject of plaintiffs' lawsuit. Counts I and IV alleged a civil rights action pursuant to sections 1983 and 1988 of the Civil Rights Act of 1871 (Civil Rights Act) (see 42 U.S.C. §§1983, 1988 (1988)) for the wilful and wanton misconduct of defendants in violating rights, privileges, and immunities accorded to plaintiffs to hold a gun show in the City. Count III is an action for false arrest. Counts II and V against Stavins and the City attempted to allege wilful and wanton misconduct on the part of defendants in violating the rights, privileges and immunities of the respective plaintiffs under sections 1983 and 1988 of the Civil Rights Act.

The issues presented in this case are whether the trial court properly dismissed counts I and V of plaintiffs' second-amended complaint on the ground that those counts were not timely filed under the appropriate statute of limitations pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), and whether any genuine issue of material fact exists which would preclude the granting of summary judgment as to defendants Costello and the City. We affirm.

On February 24, 1989, plaintiffs filed a complaint against Costello and the City for damages arising out of an incident which was alleged to

have occurred on February 27, 1988. Throughout the original complaint, the liability of the City is alleged to be predicated on the actions of Costello.

On January 4, 1990, a first-amended complaint was filed by plaintiffs. In the first-amended complaint counts I and III were directed at defendants Costello and the City. Count IV was directed at Costello alone. Counts II, V, and VI named as defendants Rochelle A. Funderburg, an assistant city attorney for the City, and the City. Counts II and V of the first-amended complaint attempted to allege actions pursuant to the Civil Rights Act against Funderburg and the City. Count VI attempted to allege a cause of action against Funderburg and the City for the allegedly unlawful arrest and prosecution of Lappin. On May 10, 1990, all counts of the first-amended complaint were dismissed on defendants' motion. On reconsideration, the dismissals of counts I and IV were vacated, and plaintiffs were given 30 days to file an amended complaint as to counts II, III, V, and VI.

On July 19, 1990, the five-count second-amended complaint was filed. Count I was directed against defendant Costello alone and alleged a violation of Lappin's rights by Costello, who was acting under color and authority of, and within the course and scope of his employment as a police officer for, the City. It is further alleged that at approximately 3 or 3:30 p.m. on February 27, 1988, Lappin was representing AAA Promotions, Inc., which was sponsoring and holding a gun show at 322 North Neil Street, Champaign, Illinois. At that time, it is alleged, Costello wilfully, wantonly, and illegally:

"(a) Ordered and demanded the Plaintiff to cease the operation of Plaintiff's gun show, by use of threats of great force and violence without lawful warrant or probable cause.

(b) Ordered and demanded the public and all persons present to vacate the premises at 322 North Neil Street, Champaign, Illinois.

(c) Inflicted severe, grievous, and permanent emotional injury upon the person of the Plaintiff.

(d) Willfully and maliciously violated the Plaintiff's Constitutional rights as enumerated hereinafter."

The rights, privileges, and immunities secured by the United States Constitution alleged to have been violated by Costello and the City were as follows:

"(a) The right of the Plaintiff to be secure in his person, and in his own premises, against unreasonable searches and seizures, under the Fourth and Fourteenth Amendments of the Constitution.

(b) The right of the Plaintiff to be free from any abridgment [*sic*] of his privileges and immunities, and Plaintiff's right not to be deprived of life, liberty, or property without due process of law, and Plaintiff's right to the equal protection of the laws, all secured to Plaintiff by the Fifth and Fourteenth Amendments of the Constitution.

(c) The right of Plaintiff to be informed of the nature and cause of accusations against him, and the right to freedom from summary punishment, secured to him by the Sixth and Fourteenth Amendments of the Constitution.

(d) The right of the Plaintiff to peaceably assemble as secured to him by the First Amendment of the Constitution."

As damages, Lappin alleged extreme physical and mental pain and suffering; degradation and humiliation to mind, body, personal reputation, and business reputation; refunds of admission to the public and exhibitors; lost wages and profits; extreme emotional distress, mental suffering, and humiliation; legal expenses and costs of suit; and an inability to continue his business due to impairment of his business reputation.

Count IV, also directed against Costello alone, alleged a civil rights action on behalf of AAA Promotions, Inc. Count IV is essentially a repleading of count II with a few exceptions. One exception is that count IV does not allege Costello wilfully, wantonly and illegally inflicted severe, grievous, and permanent emotional injury on the person of plaintiff on February 27, 1988. A second exception is that count IV does not allege a violation of a right to peaceably assemble under the first amendment. The third exception is that count IV does not allege as damages "extreme physical and mental pain and suffering" and "extreme emotional distress, mental suffering and humiliation."

Count III is a cause of action by Lappin against Costello and the City for false arrest. The alleged wilful, wanton, and illegal acts of Costello were the following: (1) closing the gun show without a warrant or probable cause; (2) ordering all persons present to vacate the premises; (3) detaining plaintiff "for a long period of time" against his will; and (4) arresting plaintiff for violation of Champaign Municipal Code section 25—88 (Champaign Municipal Code §25—88 (1980)) and requiring him to appear in court to answer alleged charges without a warrant or probable cause to believe the plaintiff was guilty of a criminal offense.

Counts II and V were civil rights actions by Lappin and AAA Promotions, Inc., respectively, against Stavins and the City. It is alleged in these counts that Costello was acting under the direction of an assistant city attorney in wilfully, wantonly, and illegally performing those acts in

the respective civil rights actions against Costello and in arresting Lappin. In both counts, the plaintiffs complained that defendants systematically and on a continuing basis adopted an unconstitutional policy of depriving citizens, the public, and the plaintiffs of constitutional rights, and that the allegedly unlawful arrest of Lappin and closing of the gun show resulted from this policy.

On August 24, 1990, a combined motion to dismiss was filed as to counts II, III and V, pursuant to sections 2—615 and 2—619 of the Code (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). The motion was denied. The trial court specifically found a five-year statute of limitations applicable. (See Ill. Rev. Stat. 1989, ch. 110, par. 13—205.) This order was entered on October 18, 1990. On November 7, 1990, defendants also moved for a reconsideration of the ruling as to the statute of limitations. On December 28, 1990, the motion to reconsider was denied. A second motion to reconsider with new authority was filed on January 17, 1991. On June 13, 1991, finding counts II and V time-barred, those counts of the second-amended complaint were dismissed with prejudice by the trial court. Plaintiffs' subsequent motion to reconsider was denied.

On October 8, 1991, Costello and the City moved for summary judgment as to the remaining counts. Among the attached exhibits were (1) the discovery depositions of Champaign fire inspector Jerry Lance, assistant city attorney Mary Ann Midden, Champaign police sergeant Maurice Wileaver, Officer Dennis Costello, Officer Brian Hockings, Officer Christopher Wagner, and plaintiff; and (2) a copy of the article of the Champaign Municipal Code dealing with itinerant merchants. In response to the motion for summary judgment, plaintiffs filed no additional exhibits or affidavits. On November 4, 1991, summary judgment was granted in favor of Costello and the City. Plaintiffs' motion to vacate the summary judgment was denied on December 11, 1991.

The article relating to itinerant merchants in the Champaign Municipal Code includes the following definitions:

> "ARTICLE IV. ITINERANT MERCHANTS
> DIVISION 1. GENERALLY
>
> * * *
>
> *Goods, wares and merchandise* shall mean any and all items of tangible personal property, except perishable, agricultural commodities.
>
> *Itinerant merchant* shall mean any person engaging or intending to engage in business in the City for a period of time not exceeding one hundred (100) days in the retail or wholesale of any goods, wares, merchandise or commodities, and shall not include peddlers or persons selling vegetables, antiques, knick-

knacks, arts and crafts, and similar items through 'flea markets,' 'farmers markets,' and similar kinds of informal sales organizations." (Champaign Municipal Code §25—76 (1980).)

Section 25—86 required an itinerant merchant to obtain a license, section 25—87 sets forth the license application procedure, and section 25—88 required a posting of $1,000 bond. Champaign Municipal Code §§25—86, 25—87, 25—88 (1980).

There is no need to recite in detail the testimony of deponents, although this court has thoroughly reviewed the depositions. It is sufficient to summarize the deposition testimony to demonstrate there was not the equivalent of a gestapo raid as alleged. On anonymous complaints, Lance went to the gun show twice. When he returned, he reported to his supervisor that there was nothing unusual, but inquired as to whether a permit had been obtained. A telephone call was made to a city clerk, who in turn called the police to inform them that plaintiffs were operating without a permit. Wileaver then called Midden for advice concerning the ordinance. Midden told Wileaver to go to the gun show and, if anyone was selling merchandise without a permit as required by the ordinance, an arrest could be made. Costello and Wagner had been to the gun show previously, at which time Costello observed there were price tags on the displayed merchandise and the nature of the merchandise displayed. On approaching the building, Wileaver observed a person collecting admission fees from the public. He also observed a posted advertisement indicating the show was going to run for the weekend. After the police entered the building in a peaceful and professional manner, Wileaver inquired as to who was in charge. He was directed to Lappin, who was in the middle of a conversation which Wileaver interpreted as renting table space to a show participant. Wileaver politely waited for the conversation to end and then asked Lappin if he was in charge. Lappin admitted he was and, on further inquiry from Wileaver, admitted he had not posted a bond. Wileaver then directed Costello to issue a notice to appear to Lappin and closed the show. Lappin admitted Costello was not disrespectful in issuing the ticket. The closing of the show took about 30 minutes, and no items of merchandise were confiscated by the police.

■ The first issue to be considered is whether any genuine issue of material fact exists which would preclude the granting of summary judgment as to defendants Costello and the City. Pursuant to section 2—1005 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005), a party may move for summary judgment and may file supporting affidavits. The opposing party may file counteraffidavits. In addition to

the affidavits, the trial court may consider the pleadings, depositions and admissions to determine whether no genuine issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. This procedure allows the trial court to determine if a genuine issue of material fact exists, but not to try the issue. While summary judgment facilitates the prompt disposition of lawsuits, it is a drastic remedy allowed only when the moving party's right to it is clear and free from doubt. In determining the propriety of granting summary judgment, the trial court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent. Although inferences may be drawn from undisputed facts, an issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-59, 543 N.E.2d 1304, 1307-08.) In reviewing the granting of summary judgment, the role of the reviewing court is to determine if the trial court correctly ruled that no genuine issue of material fact exists, and if none exists, if judgment was correctly entered for the moving party as a matter of law. *O'Hara v. Holy Cross Hospital* (1989), 185 Ill. App. 3d 694, 699, 542 N.E.2d 11, 14.

> "The entry of summary judgment is not a matter within the discretion of the trial court. In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct." *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.

While a plaintiff is not required to prove his case at the summary judgment stage, he must present some evidentiary facts to support the allegations in his complaint. (*Gardner v. Navistar International Transportation Corp.* (1991), 213 Ill. App. 3d 242, 250, 571 N.E.2d 1107, 1112.) In addition, where a party moving for summary judgment relies on supporting affidavits containing well-pleaded facts, and the party opposing the motion files no counteraffidavits, the material set forth in the movant's affidavits stand as admitted. (*Blankenship v. Dialist International Corp.* (1991), 209 Ill. App. 3d 920, 924, 568 N.E.2d 503, 506.) If the opponent of a motion for summary judgment fails to controvert the proofs offered in support of the motion, and the movant's showing of uncontradicted facts would entitle him to judgment as a matter of law, then summary judgment is proper. *Blankenship*, 209 Ill. App. 3d at 924, 568 N.E.2d at 506.

Plaintiffs request this court reverse the order granting summary judgment and remand with directions that summary judgment be granted in favor of plaintiffs. However, plaintiffs have not filed a motion for summary judgment. The only questions to be addressed here are whether the facts demonstrate that the officers had probable cause to enforce the ordinance and whether such probable cause is such a defense to civil rights and false arrest actions as to entitle defendants Costello and the City to a judgment as a matter of law.

■■ Section 1983 of the Civil Rights Act states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." (42 U.S.C. §1983, at 377-78 (1988).)

Each count of plaintiffs' complaint alleging a civil rights action recites that it is brought pursuant to both sections 1983 and 1988 of the Civil Rights Act. Section 1988 does provide for the recovery of attorney fees in the event a section 1983 violation is proved. (42 U.S.C. §1988, at 379 (1988); *Argento v. Village of Melrose Park* (7th Cir. 1988), 838 F.2d 1483, 1499.) However, section 1988 does not create an independent cause of action, and plaintiffs cannot rely on section 1988 as an independent basis for maintaining a civil rights action. 14A C.J.S. *Civil Rights* §222, at 158-59 (1991).

■■ A notice to appear may be issued by a police officer under circumstances that would authorize the officer to make a warrantless arrest. (Ill. Rev. Stat. 1989, ch. 38, par. 107—12.) No issue is raised in this case regarding whether Lappin was in fact arrested. This court need not decide whether the incident in the case was an arrest or a detention which would support claims for false arrest and civil rights violations because we find sufficient probable cause existed for the officers to make a warrantless arrest of Lappin and to close the show based on the facts known to them at that time.

■■ "[F]alse arrest is the unlawful restraint of an individual's personal liberty." (*Meerbrey v. Marshall Field & Co.* (1989), 189 Ill. App. 3d 1085, 1090, 545 N.E.2d 952, 955.) If probable cause existed for the arrest, an action for false arrest cannot lie. The existence of probable

cause is a question of law and only becomes a question of fact if the operative facts are in dispute. (*Gaszak v. Zayre of Illinois, Inc.* (1973), 16 Ill. App. 3d 50, 57, 305 N.E.2d 704, 709.) Probable cause is defined as a state of facts which, if known, would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty. (*Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 295-96, 211 N.E.2d 286, 288-89.) Not only is the existence of probable cause an absolute bar to a claim of false arrest (*Friedman v. Village of Skokie* (1985), 763 F.2d 236, 239), but the existence of probable cause to arrest is also an absolute defense to an arrestee's civil rights action against the police based on fourth and fourteenth amendment violations. (*Mosley v. LaMastus* (N.D. Ill. 1990), 741 F. Supp. 724, 726.) In *Frye v. O'Neill* (1988), 166 Ill. App. 3d 963, 979, 520 N.E.2d 1233, 1243, this court stated:

"In defining the concept of probable cause for purposes of section 1983 unlawful arrest actions, Federal courts appear to have imposed a somewhat higher standard of care on law enforcement officials than applies with respect to common law malicious prosecution actions. The quantum of evidence necessary to establish probable cause for an arrest, and thus defeat a section 1983 unlawful arrest claim, is a function of information and exigency. A smaller quantum of evidence is needed to establish probable cause where there is a possibility a suspect may flee, a crime may be repeated, or obtaining further information would interfere with the other duties of a law enforcement officer than is necessary where none of these factors are present. Generally, reasonable avenues of investigation must be pursued. Although the police must be allowed some margin of error, they must utilize the means at hand to minimize the risk of error. *BeVier v. Hucal* (7th Cir. 1986), 806 F.2d 123.

In Federal civil rights actions, whether there was probable cause for an arrest is a question of fact if there is room for a difference of opinion as to the matter. This is so because the underlying issue is the reasonableness of the defendant's actions, which in negligence cases, is a classic jury question. *Llaguno v. Mingey* (7th Cir. 1985), 763 F.2d 1560, *cert. dismissed* (1986), 478 U.S. 1044, 92 L. Ed. 2d 783, 107 S. Ct. 16."

Even if an ordinance is later held to be unconstitutional, that fact does not invalidate an arrest based on probable cause to believe the arrestee violated the ordinance. *Michigan v. DeFillippo* (1979), 443 U.S. 31, 36-38, 61 L. Ed. 2d 343, 349-50, 99 S. Ct. 2627, 2631-32.

This appeal does not involve the construction of an ordinance on which the arrest was based in the formal sense. The police officers were not relying on some legal interpretation of the language employed in the ordinance. Whether Lappin was in fact violating the ordinance was a matter left for the court in the criminal action.

■ The officers were aware that an itinerant merchant could not sell merchandise within the city limits of Champaign without posting a $1,000 bond. They were also aware that a gun show was taking place in the old Sears building in downtown Champaign. Posters indicated the gun show was to run for two days. Although plaintiffs argue the officers did not know whether Lappin was going to operate in the City for a period longer than 100 days, plaintiffs have not presented by affidavit or otherwise any facts which were known to the police and would contradict the reasonable belief that the show would only operate two days in the City. Upon approaching the building, it was observed that the public was being charged an admission. Costello had been there before and noted price tags on the displayed merchandise. While the officers had not observed any sales being made at the time, it is reasonable to infer that the price tags were placed on merchandise to facilitate the sale of the merchandise. The nature of the merchandise included rifles, pistols, shotguns, ammunition, and knives. Although it may be, as plaintiffs argue, that other items such as books and handicrafts were displayed, the handguns, ammunition, and knives were not perishable, agricultural products. The officers could also reasonably believe that such items were not "vegetables, antiques, knick-knacks, arts and crafts, and similar items [sold] through 'flea markets,' 'farmers markets' and similar kinds of informal sales organizations." Lappin admitted he was in charge and had not posted a bond. There is no evidence that the officers were aware of any correspondence or telephone conversations between Lappin and other Champaign city officials prior to the show being opened.

There was probable cause for the officers to arrest Lappin and close the show. The police should not be burdened with the need to make a "legal" interpretation of the words of an ordinance in order to enforce it. Lawyers and judges spend hours or days researching the terms employed. Police officers do not have that luxury. Therefore, it is unpersuasive for plaintiffs to argue that the officers did not possess a precise technical definition of "flea market" or "knick-knack."

■ Plaintiffs also ask, if corporations can be criminally charged for the same offenses (Ill. Rev. Stat. 1989, ch. 38, par. 5—4), why was

Lappin charged when he was representing AAA Promotions, Inc., and no charges were made against the corporation. There is no evidence, however, that the officers were aware of the existence of the corporate sponsor of the show. Lappin said he was in charge. Wileaver never testified he noticed the name of the corporation on the advertisements. The fact that the corporation was not charged does not affect the probable cause as to Lappin.

Plaintiffs further contend that the fact the charge was amended demonstrates lack of probable cause. It does not. In judging the officer's actions in making an arrest, the practical considerations of everyday life and the officer's responsibility to prevent crime, apprehend criminals, and act as quickly as possible in appraising data must be kept in mind. (*People v. Stachelek* (1986), 145 Ill. App. 3d 391, 399, 495 N.E.2d 984, 989.) While the mere suspicion that an offense is being committed is not sufficient, evidence sufficient to convict is not required. (*People v. Sauer* (1988), 177 Ill. App. 3d 870, 879, 532 N.E.2d 946, 953.) Even if the ordinance is unconstitutional, as long as it is not grossly or flagrantly so, the arrest is valid if the police relied in good faith on the ordinance. (*People v. Dickerson* (1984), 129 Ill. App. 3d 59, 62, 471 N.E.2d 1046, 1048.) Nor is the arrest a violation of the arrestee's constitutional rights because the information upon which the officers relied later turns out to be erroneous (*Roddy v. Catto* (1986), 143 Ill. App. 3d 176, 185, 491 N.E.2d 961, 966) or the arrestee was not convicted of the charge for which he was arrested. *People v. Ambrose* (1967), 84 Ill. App. 2d 128, 131, 228 N.E.2d 517, 519.

Plaintiffs also allege violations of rights in addition to those protected by the fourth and fourteenth amendments. Plaintiffs argue the police were without authority to seize property and to order the public to leave the premises. Plaintiffs did not argue that the city was without authority to require that businesses be licensed. Section 25—86 of the Municipal Code says: "No person shall do business in the City as an itinerant merchant without having obtained a license ***." (Champaign Municipal Code §25—86 (1980).) To get a license, a bond must be posted. No bond was posted. Therefore, plaintiffs could not do business in the City. Clearly, the officers properly shut down the business.

Plaintiffs' argument that none of the vendors at the show were arrested is also unpersuasive. Lappin was running the show. The others were paying him for the opportunity to display merchandise at the show. The determination by the police officers that Lappin was a culpable or accountable party is reasonable. The facts known to the po-

lice at the time would warrant the belief that Lappin was accountable for the criminal actions of the others. (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c).) In the absence of some intelligible equal protection argument, plaintiffs have no standing to complain that the people that were solicited to display at the show were not arrested too.

On appeal, plaintiffs only argue that the arrest of Lappin was unlawful and that the closing of the show deprived plaintiffs of property without due process of law. All other alleged rights violations need not be considered.

■ If the "property" of which plaintiffs suggest they were deprived is the right to do business in the City, without a license plaintiffs simply do not have such a right. Property interests are not created by the constitution, but by an independent source such as a State law, or local ordinance, or a mutually explicit understanding. (*La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 665, 470 N.E.2d 1239, 1245.) A property interest requires more than an abstract need or desire for a benefit and more than a unilateral expectation of it. There must be a legitimate claim of entitlement to it. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.) An ordinance enacted pursuant to the valid police power of the municipality, although it has an impact on property, does not necessarily effect a taking of private property without due process or just compensation. (*Rothner v. City of Chicago* (1978), 66 Ill. App. 3d 428, 434, 383 N.E.2d 1218, 1222; *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 731-32, 321 N.E.2d 293, 305.) When an ordinance provides for the issuance of a license, a party has no due process right to a renewal or issuance of the license. *Las Fuentes, Inc. v. City of Chicago* (1991), 209 Ill. App. 3d 766, 770, 567 N.E.2d 1093, 1096, *appeal denied* (1991), 139 Ill. 2d 597, 575 N.E.2d 916.

■ Plaintiffs here do not argue the subject ordinance requiring itinerant merchants to post a bond in order to obtain a license to be an invalid or unconstitutional exercise of the police authority of the City. Therefore, if the police officers reasonably believed that a violation of the ordinance was occurring, *i.e.*, sales by an itinerant merchant without a license or bond, then certainly the police could take whatever action was reasonably necessary to ensure that the violation of the ordinance did not persist. Under the circumstances, shutting down the gun show was reasonable.

■ The remaining issue is whether the trial court properly dismissed counts I and V of plaintiffs' second-amended complaint on the ground that those counts were not timely filed under the appropriate

statute of limitations pursuant to section 2—619 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). Defendants Stavins and the City filed a motion to dismiss counts II and V of plaintiffs' complaint pursuant to section 2—619 of the Code. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619.) Section 2—619 of the Code allows for the filing of a motion for involuntary dismissal based on defects or defenses enumerated in the statute, including that "the action was not commenced within the time limited by law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(5).) If the ground for dismissal is not evident from the face of the pleading, affidavits may be submitted in support of the motion. Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a).

> "Whenever the granting of a motion to dismiss is reviewed, all well-pleaded facts alleged in the complaint are taken as true, and the test for determining the propriety of granting the motion to dismiss is whether it appears no set of facts may be proved so as to entitle plaintiff to recover from defendant. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372; *Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 395 N.E.2d 549.) Any allegations which are merely conclusions, unsupported by allegations of specific facts, are not, however, admitted. *Howell v. Blecharczyck* (1983), 119 Ill. App. 3d 987, 457 N.E.2d 494." *Toys "R" Us, Inc. v. Adelman* (1991), 215 Ill. App. 3d 561, 564, 574 N.E.2d 1328, 1330.

In this case, no affidavits were submitted in support of the motion. The first pleading naming Stavins as a defendant was the second-amended complaint filed July 19, 1990. The cause of action arose on February 27, 1988. Plaintiffs do not contest that a two-year statute of limitations applies to section 1983 civil rights actions. *Kalimara v. Illinois Department of Corrections* (7th Cir. 1989), 879 F.2d 276, 277, citing *Owens v. Okure* (1989), 488 U.S. 235, 102 L. Ed. 2d 594, 109 S. Ct. 573; Ill. Rev. Stat. 1989, ch. 110, par. 13—202.

It is plaintiffs' contention that the cause of action pleaded in the second-amended complaint related back to the filing of the first-amended complaint, which had included counts against the City and Funderburg and which was filed on January 4, 1990. Plaintiffs' theory is that Funderburg and Stavins were sued in their official capacities and, therefore, there is really only one defendant, the City. Defendants attempt to avoid reversal by arguing that section 2—616(b) does not apply to this case and that, in any event, the second-amended complaint states a new cause of action and not simply a new theory of liability. It is unnecessary to directly respond to the parties' arguments in order to affirm the dismissal by the trial court. The judg-

ment of the trial court may be affirmed for reasons appearing of record even though those reasons were not relied on by the trial court. See *Frye*, 166 Ill. App. 3d at 973, 520 N.E.2d at 1239.

Section 2—619(a)(9) of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9)) allows for dismissal for such "other affirmative matter avoiding the legal effect of or defeating the claim." Since this court upholds the summary judgment as to Costello and the City in the remaining counts, the dismissal of counts II and V is warranted because those counts are based on the allegedly wrongful conduct of Costello at the direction of and under the policy created by the city attorney. If no wrongful acts were in fact done by the police, regardless of the city's policy, no cause of action for violation of civil rights could be maintained against the City as a matter of law. No injuries are alleged to have occurred to plaintiffs in the absence of the police action, and since the police had probable cause, plaintiffs' rights simply were not violated.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

STEIGMANN and COOK, JJ., concur.