**Mark S. FRIDLEY, et al., Plaintiffs,**

v.

**Walter HORRIGS, et al., Defendants.**

**No. C–3–99–008.**

United States District Court, S.D. Ohio, Western Division.

Aug. 2, 2000.

---

Konrad Kuczak, Dayton, OH, for plaintiffs.

Michael J. McGee, Assist. Atty. Gen., Springfield, IL, for defendant.

DECISION AND ENTRY OVERRULING PLAINTIFFS' OBJECTIONS (DOC. # 67) TO REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE (DOC. # 63); PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. # 49) OVERRULED; DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 58) SUSTAINED; PLAINTIFFS' CLAIMS AGAINST DONALD NEAL DISMISSED WITHOUT PREJUDICE FOR WANT OF PROSECUTION; CONFERENCE CALL SET TO ESTABLISH HEARING DATE TO DETERMINE PLAINTIFFS' DAMAGES AGAINST DEFENDANT DONALD GLUSZEK; PLAINTIFFS' CLAIMS AGAINST OTHER DEFENDANTS DISMISSED WITH PREJUDICE

RICE, Chief Judge.

On September 2, 1997, Plaintiff Mark Fridley ("Plaintiff") traveled from his home in Ohio to Illinois, where he exchanged car parts, titles and vehicle identification numbers for the sum of $5,000. Unbeknownst to the Plaintiff, those with whom he completed that transaction were an informant and officers of the Illinois Secretary of State Police. Under Illinois law, it is illegal to sell a vehicle identification number which has been removed from the vehicle to which it had originally been attached. *See* 625 ILCS § 5/4–103(a)(5) (" § 5/4–103(a)(5)"). As a consequence, he was arrested, incarcerated until being released the following day and subsequently prosecuted for violating Illinois law. During that prosecution, Plaintiff moved to dismiss the charges, claiming that he was the victim of entrapment. The trial court did not rule upon that request; rather, at the request of the prosecutor, the charges against Plaintiff were dismissed without prejudice.

The Plaintiff then initiated this litigation, setting forth four federal claims under 42 U.S.C. § 1983, to wit: 1) a claim that he was arrested without probable cause, in violation of the Fourth Amendment; 2) a claim that he was maliciously prosecuted, in violation of the Fourth Amendment; 3) a claim that he was denied the assistance of counsel, in violation of the Sixth Amendment; and 4) a claim that he was deprived of his property without due process of law, in violation of the Fourteenth Amendment. In addition, he has set forth claims of false arrest/ imprisonment and malicious prosecution under the common law of Illinois.[1]

This Court referred this litigation to United States Magistrate Judge Michael

---

1. The other Plaintiff, Denise Fridley (the wife of Mark Fridley), has set forth a derivative claim of loss of consortium. Since her claim is dependent upon her husband's claims, no further discussion of the loss of consortium claim will be necessary. From this point forward, the Court will refer to only one Plaintiff, Mark Fridley.

Merz, for purposes, *inter alia*, of a Report and Recommendations on dispositive motions. On June 14, 2000, that judicial officer filed his Report and Recommendations, in which he recommended that this Court enter summary judgment in favor of the Defendants on all claims set forth by the Plaintiffs.[2] *See* Doc. # 63. In addition, Judge Merz recommended that this Court overrule the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 49).[3] This case is now before this Court on the Plaintiffs' Objections to the Report and Recommendations of the Magistrate Judge. *See* Doc. # 67. In accordance with 28 U.S.C. § 636(b)(1), this Court must conduct a *de novo* review of that judicial filing. *See Roland v. Johnson*, 856 F.2d 764, 768–69 (6th Cir.1988); *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 954 (6th Cir. 1985), *cert. denied*, 479 U.S. 830, 107 S.Ct. 116, 93 L.Ed.2d 63 (1986); *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1102 (6th Cir.1984). This Court begins that *de novo* review by setting forth the standards which are applicable to all motions for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202

**2.** It should be noted that a default has been entered against one Defendant, Donald Gluszek. The Plaintiffs have failed to serve another Defendant, Donald Neal. The other Defendants, Walter Horrigs, Duane Hill, Fred Brown, Dave Poeschel and Frank Wallace, are officers who were employed by the Illinois Secretary of State Police when the events giving rise to this litigation occurred. Gluszek acted as an informant for those officers. Judge Merz recommended that this Court set a damages hearing on the default against Gluszek and that the Court dismiss, without prejudice, the Plaintiffs' claims against Neal. The Plaintiffs have not objected to those recommendations, and the Court concurs with both of them. Throughout this Decision, the Court uses "Defendants" to refer to the Defendants other than Gluszek and Neal.

**3.** With that motion, Plaintiff sought summary judgment, as to liability, on his claims under § 1983 that the Defendants had arrested him without probable cause in violation of the Fourth Amendment, had maliciously prosecuted him in violation of the Fourth Amendment and had deprived him of property without due process of law in violation of the Fourteenth Amendment. In addition, Plaintiff sought summary judgment on the Defendants' defense that they were protected by the doctrine of qualified immunity. Plaintiff also sought summary judgment, as to liability, on his claims of false arrest/false imprisonment and malicious prosecution under the Illinois common law.

(1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on

file, together with any affidavits submitted, specifically called to its attention by the parties.

 As an initial matter, the Plaintiff has not objected to Judge Merz' recommendations that summary judgment be entered in favor of the Defendants on his (Plaintiff's) § 1983 claims under Sixth Amendment and the Due Process Clause of the Fourteenth Amendment (his Third and Fourth Claims for Relief). In the absence of any objection, the Court adopts the Report and Recommendations as it relates to those two claims.[4] The central issue raised by the other claims (both state and federal) is whether the Defendants had probable cause to arrest Plaintiff.[5] For reasons which follow, the Court concludes that the evidence does not raise a genuine issue of material fact as to whether they were without such probable cause.

As is indicated, § 5/4–103(a)(5) makes it illegal to sell a vehicle identification number which has been removed from the

vehicle to which it had originally been attached. On September 2, 1997, the date of Plaintiff's arrest, arresting officers observed him sell vehicle identification numbers *which had been removed from the vehicle to which they had originally been attached;* therefore, they had probable cause to believe that he had violated § 5/4–103(a)(5). In other words, the Defendants observed the Plaintiff violate that statute in their presence. Nevertheless, the Plaintiff argues that the officers were without probable cause to arrest him, because he was entrapped into committing the offense. As a means of analysis, the Court will set forth a brief overview of the factual circumstances giving rise to this argument, following which it will turn to the relevant legal principles.

It is undisputed that the Plaintiff traveled to Illinois to engage in the transaction which led to his arrest as a result of the efforts of Donald Gluszek ("Gluszek"), an

4. Objections to a Magistrate Judge's report are waived, if not raised. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Willis v. Sullivan,* 931 F.2d 390, 400–01 (6th Cir.1991). Moreover, Plaintiff's Sixth Amendment and due process claims were clearly without merit. Plaintiff's Sixth Amendment/denial of counsel claim was predicated upon the assertion that, after having been arrested, he was unable to call his attorney at Area Code 937 from the Sangamon County Jail, located in Springfield, Illinois, where he was being held. Judge Merz concluded that the right to counsel had not attached at the time Mark Fridley was unable to make that call. Moreover, each of the Defendants states in his affidavit that he had no control over the policies of the jail. With respect to the due process claim, Mark Fridley has alleged that the Defendants deprived him of the property that was seized from him when he was arrested. Although all of that property was ultimately returned to him, Mark Fridley was deprived of possession of it for a period of time. Judge Merz correctly reasoned that the Defendants were entitled to summary judgment on this procedural due

process claim, because Plaintiff had failed to allege and to present evidence that he was without state, post-deprivation remedies.

5. No citation of authority is necessary to demonstrate that the absence of probable cause is an element of Plaintiff's claim that his arrest violated the Fourth Amendment. The existence of probable cause is an absolute bar to Plaintiff's state law claims of false arrest and false imprisonment. *Adekunle v. Hoban,* 1999 WL 618106 (N.D.Ill.1999) (citing *Kincaid v. Ames Dept. Stores, Inc.,* 283 Ill.App.3d 555, 219 Ill.Dec. 215, 670 N.E.2d 1103 (1996) and *Martel v. City of Chicago,* 223 Ill.App.3d 1028, 164 Ill.Dec. 945, 584 N.E.2d 157 (1991)). In addition, the non-existence of probable cause is an element of Plaintiff's state and federal law claims of malicious prosecution. *See e.g., Randall v. Lemke,* 311 Ill.App.3d 848, 244 Ill.Dec. 587, 726 N.E.2d 183 (2000) (Illinois common law claim of malicious prosecution); *Coogan v. City of Wixom,* 820 F.2d 170 (6th Cir.1987) (claim of malicious prosecution under § 1983 includes the elements of a common law claim of malicious prosecution).

informant utilized by the Defendants. In June, 1997, Gluszek was arrested in connection with a stolen Chevrolet Corvette. During an interview with officers following his arrest, he indicated that he was aware of other individuals who were involved in the stolen car business. Gluszek had seen an advertisement which Plaintiff had placed in *Hemmings*, a magazine of interest to traders with circulation throughout the United States, and he informed Defendant Walter Horrigs that Plaintiff was selling car parts, titles and vehicle identification numbers. The Defendants were interested, and Gluszek began negotiating with the Plaintiff, at their insistence. Gluszek called the Plaintiff at least 10 times to convince him to come to Illinois to sell car parts and the like. Plaintiff refused to make such a trip, unless he were paid a down payment of $500.00. That sum was wired to Plaintiff in Ohio, by the Defendants. Thereafter, the Plaintiff traveled to Illinois and consummated the transaction which resulted in his arrest, incarceration and prosecution. It is likewise unquestioned that the Plaintiff was the lawful owner of all property that was sold on September 2, 1997.

Entrapment, a statutory or affirmative defense in Illinois, is contained in 720 ILCS § 5/7–12, which provides:

> A person is not guilty of an offense if his or her conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of that person. However, this Section is inapplicable if the person was pre-disposed to commit the offense and the public officer or employee, or agent of either, merely affords to that person the opportunity or facility for committing an offense.

In *Humphrey v. Staszak*, 148 F.3d 719 (7th Cir.1998), the Seventh Circuit elaborated upon the entrapment defense under Illinois law:

> Under the Illinois entrapment statute, "[a] person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person." *People v. Wielgos*, 142 Ill.2d 133, 154 Ill.Dec. 640, 568 N.E.2d 861, 863 (1991) (citing Ill.Rev.Stat.1985, ch. 38, par. 7–12). The concept of entrapment provides an affirmative defense to otherwise culpable conduct on the theory that the defendant was not predisposed to commit the criminal act and instead was induced by actions of a government agent to commit the offense. *See id.* Entrapment requires four elements: "(1) [t]he concept of committing the offense originates with the State or its agent, (2) who actively encourages the defendant to commit the offense, (3) for the purpose of obtaining evidence for [defendant's] prosecution, and (4) the defendant was not predisposed to commit the offense." *Id.* In the criminal context, a defendant is entitled to an entrapment instruction only if he presents minimal evidence supporting each element. *Id.* at 862–63.

*Id.* at 723–24.

 Judge Merz has indicated that a key question is whether this Court must apply Sixth or Seventh Circuit law to the Plaintiff's § 1983 claims.[6] He indicated in his Report and Recommendations that Seventh Circuit law was applicable, since the arrest had occurred in Illinois, a state within that Circuit. This Court disagrees. The Court has been unable to locate any case law which would support the position

6. It should be noted that the parties are in agreement that the Plaintiffs' state law claims are governed by the substantive law of Illinois.

that a District Court within the Sixth Circuit should treat the decisions of another Circuit (rather than those of the Sixth) as the controlling precedent, when resolving a federal law claim.[7] On the contrary, the Sixth Circuit has indicated that its precedent is applicable to the resolution of a federal law claim, despite the fact that the lawsuit was transferred from another Circuit pursuant to 28 U.S.C. § 1404(a), in part because federal law is presumed to be consistent. *EEOC v. Northwest Airlines,* 188 F.3d 695, 700–01 (6th Cir.1999). *Accord, Bradley v. United States,* 161 F.3d 777, 782 n. 4 (4th Cir.1998).

Moreover, the relevant law of the Seventh Circuit does not differ from that of the Sixth. In response to the Plaintiff's argument that the officers were obligated to consider his affirmative defense of entrapment, before arresting him, Judge Merz, having concluded that Seventh Circuit precedent was controlling, cited *Eversole v. Steele,* 59 F.3d 710 (7th Cir.1995), for the proposition that officers do not have an obligation to conduct a further investigation in an effort to discover exculpatory evidence, if they have probable cause to arrest a suspect. The Sixth Circuit has announced a similar rule. *See e.g., Ahlers v. Schebil,* 188 F.3d 365, 371 (6th Cir.1999) ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused," citing *Schertz v. Waupaca County,* 875 F.2d 578, 583 (7th Cir.1989), and *Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988)). Thus, there is no conflict between Sixth Circuit case law and the Seventh Circuit's decision in *Eversole.* Therefore, for this and all of the above reasons, the Court will apply the law of the Sixth Circuit to the issues presented herein.

The Plaintiff places primary reliance upon a line of cases, the progenitor of which is *Estate of Dietrich v. Burrows,* 167 F.3d 1007 (6th Cir.1999).[8] Kenneth Dietrich, one of the plaintiffs therein, was the former Chief of Police for Perkins Township, Ohio, while the other plaintiff was his son. After leaving his position as Chief of Police, Kenneth Perkins had formed an security/investigative agency serving that community. At some point thereafter, the plaintiffs informed the Chief of Police for Perkins Township that they intended to begin offering armed money courier service to area businesses, in order to ensure the safe delivery of their customers' cash to the intended destinations. While the plaintiffs were engaged in the activity, the

---

7. In their Motion for Summary Judgment, the Defendants argued, in the alternative, that they had probable cause to arrest Plaintiff and that they were protected by the doctrine of qualified immunity. Qualified immunity has two components, to wit: that a specific constitutional right of the plaintiff was violated, and that the right was clearly established at the time of the incident. *See e.g., Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Herein, the Plaintiff contends that the Defendants violated his constitutional right, guaranteed by the Fourth Amendment, to be free from an arrest which was not supported by probable cause. The Sixth and Seventh Circuits do not differ on the issue of whether an arrest without probable cause violates the Fourth Amendment.

The Court will assume, purely *arguendo,* that, since the arrest took place within the Seventh Circuit, its decisions are relevant to the question of whether the right in question was clearly established. However, given that the evidence does not raise a genuine issue of material fact as to whether the Defendants were without probable cause to arrest Plaintiff, it is not necessary to explore the second component of the qualified immunity analysis and to decide whether Seventh Circuit precedent is controlling in that regard.

8. Purely as a parenthetical aside, the Court has not located any Seventh Circuit authority, contrary to the legal principles applied in *Estate of Dietrich.*

defendants, law enforcement officers for Perkins Township, Ohio, arrested the plaintiffs for carrying concealed weapons, in violation of Ohio Revised Code § 2923.12(A). After those charges had been dismissed, the plaintiffs sued, setting forth, *inter alia,* a claim under § 1983, alleging that their rights had been violated because they had been arrested without probable cause. The District Court had overruled the defendants' motion for summary judgment, which was predicated in part on the doctrine of qualified immunity. The defendants appealed, arguing that they had probable cause to arrest the defendants, since the plaintiffs had unquestionably violated § 2923.12(A). The Sixth Circuit rejected that argument, since the facts known to the officers at the time of the arrest, coupled with the affirmative defense contained in § 2923.12(C)(1),[9] made it clear that the officers did not have probable cause to believe that an offense had been committed, was being committed or was about to be committed. The Sixth Circuit did not, however, establish a rule that an officer must conduct an investigation into an alleged affirmative defense before arresting someone, about whom the officer has probable cause. Indeed, the Sixth Circuit distinguished a case relied upon by the defendants, *Weible v. City of Akron,* 1991 WL 77187 (Ohio App.1991),[10] writing:

Unlike the officers in that case, who could not have known of Weible's justification for carrying a concealed weapon prior to her arrest, the officers in this case had full knowledge of facts and circumstances that conclusively established, at the time of the Dietrichs' arrests, that the plaintiffs were justified— by statute—in carrying concealed weapons during their work. Consequently, none of the defendants had probable cause at the time of the arrests to believe the plaintiffs had violated, were violating, or were about to violate the law. The district court thus properly ruled that the Dietrichs had made out a valid Fourth Amendment claim.

167 F.3d at 1012. In rejecting the defendants' argument that the right upon which the plaintiffs were relying was not clearly established, the Sixth Circuit wrote:

The defendants contend that it was not "clearly established" in 1991 that a police officer must analyze the validity of an arrestee's claim of an affirmative defense to a charge of carrying a concealed firearm before effecting an arrest for that crime. Such an argument, however, misstates the relevant inquiry for the court in this case. The law has been clearly established since at least the Supreme Court's decision in *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that

**9.** Section 2923.12(C)(1) provides:
(C) It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordnance, that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply:
(1) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in or was going to or from the actor's lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a

time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent person in going armed.

**10.** In *Weible,* the court concluded that officers had probable cause to arrest the plaintiff for carrying a concealed weapon, despite her protestations that she had a right to carry the weapon for her protection due to the fact that she had been raped eight months earlier. The court indicated that an officer was not required to evaluate a person's claim to an affirmative defense before arresting her.

probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*

The evidence before the district court in this case was uncontroverted that when the defendants prepared to arrest the Dietrichs for carrying concealed weapons, the officers knew who the plaintiffs were and also were fully aware that the plaintiffs were carrying firearms for the purpose of protection in the course of their occupations. Consequently, the defendants knew, or should have known, that under the circumstances presented, the plaintiffs were not engaged in activities violating the prohibitions of O.R.C. § 2923.12. Even in 1991, the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual. The district court, therefore, appropriately concluded that the defendants were not entitled to qualified immunity from prosecution on the Dietrichs' Fourth Amendment claim.

*Id.* at 1012–13 (emphasis in the original).[11]

■ Thus, *Estate of Dietrich* merely holds that, in determining whether he has probable cause to arrest someone, an officer is not free to ignore exculpatory information *known to him,* merely because that exculpatory information would establish an affirmative defense. In other words, if an officer has knowledge of facts which establish an affirmative defense, he is without probable cause to arrest, even though he has probable cause to believe that the person engaged in activity which constitute all elements of the offense. However, the Sixth Circuit did not, therein, suggest that an officer must *investigate* a person's claims to an affirmative defense, i.e., to determine if facts exist then unknown to him, or risk being sued for violating the Fourth Amendment. Accordingly, the Court turns to the question of whether the Defendants in this litigation possessed knowledge of facts which would have established Plaintiff's entrapment defense to the charge that he had violated § 5/4–103(a)(5).

■ As an initial matter, the Plaintiff argues that Judge Merz erroneously absolved the Defendants of their obligation of proving that he (Plaintiff) was predisposed to commit the offense. As the Plaintiff argues, predisposition is an element of entrapment under Illinois law. If the government has induced the defendant to commit the offense, he can be found guilty only if he was predisposed to commit it. Like federal law, when a criminal defendant has submitted sufficient evidence to raise an entrapment defense, the government has the obligation of proving predisposition beyond a reasonable doubt. *See e.g., People v. Placek,* 184 Ill.2d 370, 380–81, 235 Ill.Dec. 44, 704 N.E.2d 393, 397–98 (1998). However, herein, the issue is whether the Defendants had probable cause to arrest Plaintiff, because he was violating § 5/4–103(a)(5), not whether there would have been sufficient evidence to convict him. As is discussed above, the Sixth Circuit has held that probable cause is vitiated when the arresting officer has *knowledge* of facts which establish a defense to a crime. Moreover, there is no requirement that officers conduct an *inves-*

---

11. In *Painter v. Robertson,* 185 F.3d 557 (6th Cir.1999), the Sixth Circuit applied the principles announced in *Estate of Dietrich,* to conclude that the defendants were without probable cause to arrest the plaintiff for carrying a concealed weapon, in violation of Ohio law, since they had knowledge of facts establishing the plaintiff's affirmative defense to that charge.

*tigation* into possible affirmative defenses, in order to discover exculpatory evidence. Thus, while knowledge on the part of the officers, before they arrested Plaintiff, that he was not predisposed to commit the offense with which he was charged, might have negated the existence of probable cause (or at least raised a genuine issue of material fact on that issue),[12] the absence of knowledge of predisposition does not trigger a pre-arrest obligation on the part of the officers to investigate the existence of predisposition on the part of the person to be arrested, and does not affect the existence of probable cause to make that arrest.

 The Plaintiff's entrapment defense appears to be somewhat unique. He has not presented evidence that Gluszek induced him to sell vehicle identification numbers which had been removed from the vehicle to which they had originally been attached, much less that the Defendants were aware of such inducement.[13] Moreover, there is no evidence that Gluszek encouraged the Plaintiff to remove those numbers. Rather, the Plaintiff contends that he was entrapped into commit-

ting the offense, by being induced to travel to Illinois to engage in a transaction, which, although illegal in that state, did not violate Ohio law.[14] The Court will assume for sake of argument that an entrapment defense could be established under Illinois law, by a person claiming to have been induced into traveling to that state to engage in activity which was legal in the state of his residence. It cannot be questioned that the Defendants induced the Plaintiff to travel to Illinois, since they directed Gluszek to communicate with him and provided the sum of $500.00 for a down payment to convince Plaintiff to travel from Ohio to Illinois. However, there is simply no evidence that the Defendants knew that the sale of vehicle identification numbers, which had been removed from the vehicle to which they had been originally attached, was legal in Ohio. Even if one were to assume that a reasonable officer is knowledgeable about the law of all 50 states, the Ohio statute does not expressly state or conclusively establish that the Plaintiff's conduct would have passed legal muster in Ohio. Ohio Revised Code § 4549.62, which defines offenses relating

---

12. There is no evidence that the Defendants had any knowledge concerning the Plaintiff's predisposition, prior to arresting him.

13. The uncontroverted evidence is that the Defendants did not monitor the telephone calls between the Plaintiff and Gluszek.

14. It may be that the Plaintiff has taken a broader view. He may be arguing that, whenever officers engage in any type of inducement, such as offering to purchase contraband from an individual, they have knowledge of sufficient facts to know or that they should have known that the individual was entrapped and, therefore, did not commit an offense. If that is the Plaintiff's argument, the Court cannot agree with it. As has been discussed above, the Sixth Circuit does not permit an officer to ignore facts *known* to him when making an arrest, merely because those facts would establish an affirmative defense to an offense, rather than negating an essential

element of that offense. *Estate of Dietrich, supra.* However, the Sixth Circuit has also held that, once probable cause is established, an officer need not *investigate* further to uncover exculpatory evidence. *Ahlers, supra.* Moreover, the Court has not located a single decision which remotely suggests that an officer must *investigate* the possibility of an entrapment defense, before arresting someone, merely because the officer has offered some sort of an inducement, such as offering to purchase contraband. Such a holding would equate entrapment with the mere act of providing an opportunity to commit a crime to one already predisposed to do so. *Cf. United States v. Reed,* 220 F.3d 476 (6th Cir.2000) (officers had probable cause to arrest defendant for trespass, despite the fact that they failed to investigate whether he had a privilege to be on the premises).

to tampering with vehicle identification numbers, provides, in pertinent part:

(A) No person shall, with purpose to conceal or destroy the identity of a vehicle or vehicle part, remove, deface, cover, alter, or destroy any vehicle identification number or derivative thereof on a vehicle or vehicle part.

\* \* \* \* \* \*

(D)(1) No person shall buy, offer to buy, sell, offer to sell, receive, dispose of, conceal, or, except as provided in division (D)(4) of this section, possess any vehicle or vehicle part with knowledge that the vehicle identification number or a derivative thereof has been removed, defaced, covered, altered, or destroyed in such a manner that the identity of the vehicle or part cannot be determined by a visual examination of the number at the site where the manufacturer placed the number.

\* \* \* \* \* \*

(3) Divisions (A), (B), and (D)(1) and (2) of this section do not apply to the good faith acquisition and disposition of vehicles and vehicle parts as junk or scrap in the ordinary course of business by a scrap metal processing facility as defined in division (E) of section 4737.05 of the Revised Code or by a motor vehicle salvage dealer licensed under Chapter 4738. of the Revised Code. This division (D)(3) does not create an element of an offense or an affirmative defense, or affect the burden of proceeding with the evidence or burden of proof in a criminal proceeding.

(4)(a) Divisions (D)(1) and (2) of this section do not apply to the possession of an owner, or the owner's insurer, who provides satisfactory evidence of all of the following:

(I) That the vehicle identification number or derivative thereof on the vehicle or part has been removed, defaced, covered, altered, or destroyed, after the owner acquired such possession, by another person without the consent of the owner, by accident or other casualty not due to the owner's purpose to conceal or destroy the identity of the vehicle or vehicle part, or by ordinary wear and tear;

(ii) That the person is the owner of the vehicle as shown on a valid certificate of title issued by this state or certificate of title or other lawful evidence of title issued in another state, in a clear chain of title beginning with the manufacturer;

(iii) That the original identity of the vehicle can be established in a manner that excludes any reasonable probability that the vehicle has been stolen from another person.

Nothing in that statute says that it is lawful for the owner of a vehicle to remove vehicle identification numbers from a automobile or one of its parts and then sell the number separately. However, that is precisely what the Plaintiff did. Moreover, that statute makes it illegal to remove a vehicle number from an automobile for the purpose of destroying or concealing the identity of the automobile. Plaintiff arrived in Illinois with vehicle identification numbers which had been removed from vehicles, which certainly dispels the idea that the Defendants knew that the Plaintiff was engaging in activity that was lawful in Ohio. Although that statute provides an owner's defense (*see* Ohio Revised Code § 4549.62(D)(4)),[15] that defense is limited to possession. It does not remotely sug-

---

15. A defense is also provided to operators of junk yards. There is no indication that the Plaintiff was involved in that industry.

gest that the owner may sell vehicle identification numbers which have been removed from a vehicle or a vehicle part. Moreover, the owner must present evidence to establish the three elements of that defense. There is no indication that the Defendants, when they arrested the Plaintiff, were aware of facts which might have established that defense.

In sum, the Defendants had probable cause to believe that the Plaintiff was violating § 5/4–103(a)(5), when they observed him sell vehicle identification numbers which had been removed from the vehicle to which they had originally been attached. Moreover, the Defendants, unlike those in *Estate of Dietrich*, did not, at the time they arrested the Plaintiff, have knowledge of facts which would establish his affirmative defense of entrapment and, thus, demonstrate that he had not committed an offense.[16]

Accordingly, the Court overrules the Plaintiffs' Objections (Doc. # 67) to the Report and Recommendations of the Magistrate Judge (Doc. # 63).[17] Said Re-

---

16. As did the Magistrate Judge, this Court rejects the Plaintiff's argument that the dismissal of charges against him has a collateral estoppel effect on whether he was entrapped. During his prosecution in Illinois state court, the Plaintiff moved to dismiss the charges against him, arguing that he had been entrapped. Before that motion could be ruled upon, the prosecution dismissed the case, without prejudice. The Sixth Circuit has repeatedly stressed that collateral estoppel is applicable in federal court, only if the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of that issue. *Markowitz v. Campbell*, 190 F.3d 455, 461 (6th Cir.1999). Under Illinois law, collateral estoppel is applicable only when an issue has been actually litigated. *See e.g., Smith Trust & Savings Bank v. Young*, 312 Ill.App.3d 853, 245 Ill.Dec. 308, 727 N.E.2d 1042 (2000). Since the Plaintiff's entrapment defense was not actually litigated, the dismissal of the charges against him does not have a collateral estoppel effect in this litigation.

17. In that filing, the Plaintiff makes a number of specific objections, many of which relate to Judge Merz' citation of evidence, such as the fact that he cited unauthenticated pages of Plaintiff's deposition testimony, which had been attached to the Defendants' motion, when the entirety of the transcript of that deposition had not been filed. At the same time they filed their Objections, the Plaintiffs filed a complete transcript of Mark Fridley's deposition. Given the fact that a complete transcript of that deposition has been filed, and, further, since this Court must conduct a *de novo* review of the evidence, Plaintiff has not suffered any prejudice as a result of Judge Merz' citation to unauthenticated pages from the transcript of his (Plaintiff's) deposition testimony. Plaintiff also argues that the Magistrate Judge mischaracterized evidence. None of those types of objections warrant detailed discussion, given that this Court must conduct a *de novo* review of the evidence. The Court will comment briefly upon two of the specific points raised by the Plaintiff, in order to explain why neither of those matters demonstrates the existence of a genuine issue of material fact.

*First*, Plaintiff argues that the Defendants were without reliable information concerning him, before he was arrested, since they did not possess any information concerning Gluszek's trustworthiness. This is not a case where officers obtained a search or arrest warrant on the basis of information, which had been supplied by an untrustworthy informant. Rather, the Defendants saw the Plaintiff sell vehicle identification numbers, in violation of § 5/4–103(a)(5). Thus, their probable cause was based upon their own observations, rather than those supplied by an informant. Consequently, the trustworthiness of Gluszek is not relevant.

*Second*, Plaintiff contends that Judge Merz improperly discounted the affidavit of his (Plaintiff's) expert witness, Michael D'Amico. Simply stated, the penultimate portion of that affidavit (essentially opining that the Defendants knew that Plaintiff had been entrapped) is conclusory and insufficient to raise a genuine issue of material fact. *See e.g., Doren v. Battle Creek Health System*, 187 F.3d 595, 598–99 (6th Cir.1999) (conclusory affidavit from expert which fails to contain specific

786

port and Recommendations are adopted. In so doing, the Court overrules the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 49), and sustains the Defendants' Motion for Summary Judgment (Doc. # 58).

■ As is explained above, with the exception of his denial of counsel and deprivation of property without due process claims, the absence of probable cause is an essential element of all of the federal and state claims asserted by Plaintiff Mark Fridley. *See* p. 7, *supra.* Therefore, the Court's conclusion that the Defendants had probable cause to arrest him entitles them to summary judgment on all those claims.[18] As a result of the Court's rulings herein, the Plaintiffs' claims against all Defendants, other than Gluszek and Neal, are dismissed with prejudice.[19] The Plaintiffs' claims against Neal are dismissed without prejudice, for want of prosecution. The Court establishes a conference call on Friday, August 11, 2000, at 4:30 p.m., for the purpose of selecting a date for a damages hearing on Plaintiffs' claims against Gluszek. Only counsel for Plaintiff need participate in that conference call.

facts and merely restates the requirements of the law cannot create a genuine issue of material fact sufficient to defeat summary judgment); *Mitchell v. Toledo Hospital,* 964 F.2d 577, 584 (6th Cir.1992) (holding that conclusory statements are insufficient to raise a genuine issue of material fact and, thus, cannot defeat a properly supported motion for summary judgment).

18. Courts in Illinois have recognized that probable cause under the Fourth Amendment imposes a higher standard on law enforcement officials, than that which is applicable for common law torts. *See Lappin v. Costello,* 232 Ill.App.3d 1033, 174 Ill.Dec. 114, 598 N.E.2d 311 (1992). Therefore, this Court's conclusion that the Defendants had probable cause to arrest the Plaintiff, under the Fourth Amendment, means that they had probable cause under the Illinois common law.

19. Since the loss of consortium claim of Denise Fridley is derivative of her husband's claims, the Court's conclusion herein that the Defendants, other than Gluszek and Neal, are entitled to summary judgment on her husband's claims necessarily means that those Defendants are also entitled to summary judgment on her loss of consortium claim.